[Civ. No. 49073. First Dist., Div. One. Jan. 14, 1981.]

JAY W. ROBINSON, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
EMCO DISTRIBUTORS et al., Respondents.

COUNSEL

Beauzay, Hammer, Ezgar, Bledsoe & Rucka and Frederick L. Boyd, Jr., for Petitioner.

Goshkin, Pollatsek, Meredith & Lee and Jack A. Pollatsek for Respondents.

---

**OPINION**

**GRODIN, J.**—Petitioner was employed by respondent Emco Distributors on June 13, 1975, when he sustained an on-the-job injury to his back. The judge who heard his case for the Workers' Compensation Appeals Board found him to be 100 percent disabled by reason of that injury, but on reconsideration, the board decided that 19 percent of his disability was attributable to a prior back injury which petitioner suffered while working for the employer's predecessor, and reduced his award accordingly. ■ The question before us on this writ of review is whether on the basis of applicable criteria the board's finding of apportionment is supported by substantial evidence in the record. (Lab. Code, § 5952[1]; *Brammer* v. *Workers' Comp. Appeals Bd.* (1980) 108 Cal.App.3d 806, 811-812 [166 Cal.Rptr. 769].)

*Petitioner's Work History*

Petitioner was employed as a warehouseman when he injured his back in 1965. Corrective surgery, in the form of a laminectomy, was performed, and he received a partial permanent disability rating of 32 percent.

In February 1966 petitioner returned to light work with the same employer as an inventory control clerk. He remained in this work for approximately a year, complying with prophylactic admonitions that he avoid lifting in excess of 25 pounds and that he avoid repeated bending and stooping. In 1967 petitioner helped start a toy department for his employer, and for approximately six months he conducted a one-person operation in which he received goods, warehoused them, and made sales and deliveries.

In 1968 petitioner became a warehouse foreman, and continued in that capacity until his most recent injury. As warehouse foreman he worked an average of 10 hours a day. His first 2 hours were spent in making sure that some 40 trucks were properly loaded with merchandise, and he sometimes assisted in the loading process if personnel was

---

[1]Hereinafter all statutory references are to the Labor Code unless otherwise designated.

short. Then, he supervised other warehouse work, including the receiving of goods, the stocking of shelves, and the filling of orders. Here, too, he would perform the physical work when necessary. Alfred Moore, one of the coowners of Emco Distributors, testified that "[m]any times because of injury or sickness of somebody...he would have to, in the course of his day, spend some time doing any one of ten or twelve jobs that were going on at the warehouse in any given time." Mr. Moore observed petitioner from time to time handling boxes which contained health and beauty aid items and weighing an average of 75 pounds; and he testified that there were days when petitioner spent virtually all day doing physical activities involving lifting and bending. There were times when petitioner would help unload 4,000 cases of hairspray, each case weighing about 75 pounds.

During this seven-year period petitioner observed no work limitation because of his back, experienced no difficulty with his back, never saw a physician in regard to his back, and lost no time from work. There is no dispute with respect to these factual aspects of the case.

The board's apportionment conclusion rests upon the reports of two physicians, Dr. Holmboe and Dr. MacKinnon. The former, who first examined petitioner in 1978, stated in his report: "In my opinion, the patient would have had at least prophylactically a Category D, or 25 per cent standard rating for his laminectomy performed in 1965. As a precautionary measure I generally place all postlaminectomy patients in this category only to protect them from the very thing that happened to this patient, that is, with continued repeated lifting, bending and stooping the patient ends up with recurrence of pain, sometimes not improved by any other treatment method. We now have a patient who is considerably more disabled than he was prior to his injury and in fact, reports becoming asymptomatic six months after he returned to work in 1966. I am always amazed that in spite of a 32 per cent disability rating that patients become asymptomatic and feel that they are normal. I guess they must feel also that the disability rating that they receive was a windfall. In any event, prophylactically the patient should have had disability and apparently this was the case. So it would seem fair to me to subtract the patient's present disability from that that he had already received in settling this case."

Dr. MacKinnon, who did see petitioner after his first injury, stated in a report: "The injury of June 13, 1975 consisted of bending, picking up a 15 pound weight and raising it. This caused back and right leg pain.

There was of course a degree of permanent disability existing before June 1975—probably category 'D', that is precluding heavy lifting, repeated bending and stooping."

Noting that none of the other reporting physicians addressed the issue of what residual disability petitioner had after his 1965 injury, the board reasoned that "there does not appear to be any substantial evidence to controvert [these two physicians'] conclusions that [petitioner] had not rehabilitated himself from his prophylactic restrictions." On the other hand, it appeared to the board from petitioner's testimony that "the specific prophylactic restriction described by Dr. MacKinnon and Dr. Holmboe..., was excessive"; and that "[b]ased on the activity that [petitioner] was actually able to perform without having ill effects, a restriction from 'very heavy work' appears to be a more accurate reflection of [petitioner's] level of disability at that time." It was on this basis that the board arrived at the 19 percent apportionment.[2]

*Discussion*

While the term "apportionment" does not appear in the Labor Code except with reference to the division of liability between insurance carriers and employers (see 2 Hanna, Cal. Law of Employee Injuries and

---

[2]"Very heavy work" in this context is a term of art related to "guidelines for work capacity" which the Workers' Compensation Appeals Board uses in determining standard ratings for disability. (See Williams, *Computation of Apportionment in Permanent Disability Cases Under California Workers' Compensation Law* (1980) 15 Cal. Western L.Rev. 395, 472 et seq.; 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1978) § 11.02[3].) According to the guidelines, disability precluding very heavy work "contemplates the individual has lost approximately one-quarter of his pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling and climbing or other activities involving comparable physical effort," and yields a standard rating of 15 percent. The standard rating is then adjusted for occupation and age.

As illustrated by the facts of this case, the consequences to an employee of an apportionment determination on the basis of current formulae can be quite substantial. Without apportionment, for example, petitioner would receive $119 per week for life. Assuming a life expectancy of 70 years petitioner, who was 44 at the time of the injury, could expect to receive 26 years of payment for a total of $160,888. Under the board's award, he would receive weekly payments of $70 per week for 469.25 weeks and $33.92 per week for life, for a total (assuming the same life expectancy) of $62,790.38. (Cf. *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1 [128 Cal.Rptr. 673, 547 P.2d 449].)

Thus, an apportionment of 19 percent of petitioner's current disability to his prior injury resulted in a projected lifetime reduction in his permanent disability benefits of more than 61 percent. The amount of the reduction in dollars ($98,097.62) is more than 10 times the amount ($9,712.50) that he received in permanent disability payments as a result of his first injury.

Workmen's Compensation (2d ed. 1980) § 14.04[1]), it is commonly used to describe the process by which it is determined whether and to what extent the disability following a current industrial injury should be attributed to a prior disease (§ 4663)[3] or to a previous permanent disability or physical impairment (§ 4750).[4] ■ The principle reflected in section 4750 (which is the only apportionment provision involved in this case) is that "An employer of a workman who has a permanent physical impairment and who thereafter sustains a compensable injury resulting in permanent disability, is not liable for compensation for the ensuing combined disabilities, but only for that portion of permanent disability which is caused by the last injury." (*Smith* v. *Industrial Acc. Com.* (1955) 44 Cal.2d 364, 365 [282 P.2d 64]; see also *Edson* v. *Industrial Acc. Com.* (1928) 206 Cal. 134, 138-139 [273 P. 572].) ■ The purpose of this statutory provision is "to encourage the employment of physically disabled persons by assuring an employer that he will not be liable for the total combined disability present after an industrial injury, but only for that portion which is attributable to the subsequent industrial injury." (*State Compensation Ins. Fund* v. *Industrial Acc. Com.* (1963) 59 Cal.2d 45, 49 [27 Cal.Rptr. 702, 377 P.2d 902].)

It has been aptly observed that "Despite [a] wealth of adjudication and commentary, [apportionment] continues to generate confusion among claimants, defendants, medical experts and those who must rule on the merits of apportionment claims." (*Duthie* v. *Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 721, 727 [150 Cal.Rptr. 530].) The case law does establish, however, a number of guiding principles which are useful here. (For an excellent overview, see Williams, *Computation of Apportionment in Permanent Disability Cases Under California Workers' Compensation Law* (1980) 15 Cal. Western L.Rev. 395, hereinafter *Apportioning Permanent Disability*.)

---

[3]Section 4663 provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

[4]Section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

■ A permanent disability is one which causes impairment of earning capacity, impairment of the normal use of a member, or a competitive handicap in the open labor market. (*State Compensation Ins. Fund* v. *Industrial Acc. Com., supra,* 59 Cal.2d 45, 52.) ■ The previous condition, as to which apportionment is sought, must be actually "labor disabling." (*Subsequent Injuries Fund* v. *Industrial Acc. Com.* (1961) 56 Cal.2d 842, 845-846 [17 Cal.Rptr. 144, 366 P.2d 496].) And a preexisting disability cannot be established by a "retroactive prophylactic work restriction" on the preexisting condition placed on the injured worker after the subsequent industrial injury in the absence of evidence to show that the worker was actually restricted in his work activity prior to the industrial injury. (*Hulbert* v. *Workmen's Comp. Appeals Bd.* (1975) 47 Cal.App.3d 634, 640 [121 Cal. Rptr. 239]; *Gross* v. *Workmen's Comp. Appeals Bd.* (1975) 44 Cal. App.3d 397, 404-405 [118 Cal.Rptr. 609]; *Amico* v. *Workmen's Comp. Appeals Bd.* (1974) 43 Cal.App.3d 592, 606 [117 Cal.Rptr. 831]; *Franklin* v. *Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224, 238 [145 Cal.Rptr. 22].)

Of course, where the injured worker was actually under a prophylactic restriction for a preexisting condition *at the time* of the second injury, apportionment to a preexisting disability is proper. (*Amico* v. *Workmen's Comp. Appeals Bd., supra,* 43 Cal.App.3d 592, 606.) ■ But the fact that a worker received a permanent disability rating for his earlier injury, and was in fact partially disabled for some period of time, does not provide a basis for apportionment. "The California scheme of permanent disability contemplates the potential rehabilitation of the injured worker. Therefore, an employee . . . with a specified disability who is able to rehabilitate himself will be compensated for his loss of earning capacity or, as expressed statutorily, loss of ability 'to compete in an open labor market' within a given number of weeks." (*Apportioning Permanent Disability, supra,* 15 Cal. Western L.Rev. at p. 396.) And "if an injured employee recovers and thereafter is again injured, he is entitled to compensation for the injury to his rehabilitated condition, not limited in amount by the terms of a former award." (*Amico, supra,* at p. 608.)

■ Normally, whether an employee has succeeded in rehabilitating himself will turn on evidence as to whether he was actually restricted in his work activity prior to his second injury (*Amico, supra,* 43 Cal. App.3d at p. 606), i.e., whether the employee suffered from an actual incapacity to perform the tasks usually encountered in his or her em-

ployment (*Gross* v. *Workmen's Comp. Appeals Bd., supra*, 44 Cal.App. 3d at p. 401; *Hulbert* v. *Workmen's Comp. Appeals Bd., supra*, 47 Cal. App.3d at p. 640, fn. 1). An exception to that rule may exist where the worker's employment prior to the second injury is determined (on the basis of its light or sedentary nature) to be "congenial" to the preexisting disability, and where it can be demonstrated by competent evidence that the preexisting condition, though it did not interfere with that work, was nevertheless disabling within the meaning of the statute. (Cf. *Franklin* v. *Workers' Comp. Appeals Bd., supra*, 79 Cal.App.3d 224 at pp. 238, 241; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1972) 24 Cal. App.3d 650, 658 [100 Cal.Rptr. 540]; see also *Subsequent Injuries Fund* v. *Industrial Acc. Com., supra*, 56 Cal.2d 842, 845.) This exception, however, should not be used to revive the now discredited theory of apportionment to preexisting retrospective restrictions. Accordingly, "[t]his form of apportionment should be scrutinized very carefully by the workers' compensation judges, the Appeals Board, and the courts to ensure that evidence supporting this type of apportionment is substantial." (*Apportioning Permanent Disability, supra*, 15 Cal. Western L.Rev. at p. 425.)

■ Finally, the Supreme Court has recently observed that "[i]t is the employer who benefits from a finding of apportionment, and both the board and writers on the subject have construed the law to require the employer to bear the burden of demonstrating that apportionment . . . is appropriate." (*Pullman Kellogg* v. *Workers' Comp. Appeals Bd.* (1980) 26 Cal.3d 450, 456 [161 Cal.Rptr. 783, 605 P.2d 422].) While that case involved a claim of apportionment to alleged disability from a preexisting disease under section 4663, nothing in the opinion or in reason suggests that a different rule would apply to apportionment claimed under section 4750.

■ Applying these principles to the instant case we find no substantial evidence to support the board's conclusion. The fact that petitioner was under prophylactic limitations when he first returned to work after his laminectomy does not establish that he still suffered disability nine years later. Both petitioner and his employer apparently assumed that those restrictions did not continue indefinitely, and the board's decision apportioning disability on the basis of "very heavy lifting" is itself inconsistent with those limitations. Moreover, the evidence from both petitioner and his employer established that for some seven years prior to his second injury he regularly performed all of the warehouseman work that he previously performed. While he may not have

been performing such work to the same extent as before, it can hardly be said that his job as warehouse foreman was "congenial" to a back disability.

In any event, the record is lacking in competent evidence that petitioner's "preexisting condition did interfere or would have actually interfered" with his performance of work which he was capable of performing prior to his first injury. (*Franklin* v. *Workers' Comp. Appeals Bd., supra,* 79 Cal.App.3d at p. 241.) While the board relied upon the reports of Drs. Holmboe and MacKinnon for the proposition that petitioner did not entirely rehabilitate himself from the earlier prophylactic restrictions, neither physician provided an explanation of that conclusion in terms of evidence compatible with applicable legal principles. Dr. Holmboe, who never saw the patient before the second injury, expressed chagrin that a patient who received a 32 percent disability rating would regard that as a "windfall" and claim rehabilitation; but the only explanation contained in his report for his conclusion that "the patient would have had at least prophylactically a Category D, or 25 per cent standard rating for his laminectomy performed in 1965" was his statement that "As a precautionary measure I generally place all postlaminectomy patients in this category only to protect them from the very thing that happened to this patient." And Dr. MacKinnon in his report provides no explanation at all for his conclusion that "There was of course a degree of permanent disability existing before June 1975—probably category 'D.'"

■ "Although the board must rely on expert medical opinion in resolving the issue of apportionment, an expert's opinion which does not rest upon relevant facts or which assumes an incorrect legal theory cannot constitute substantial evidence upon which the board may base an apportionment finding." (*Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794, 798 [69 Cal.Rptr. 88, 441 P.2d 928].) Furthermore, "[a]n expert opinion is also insufficient to support a board determination when that opinion is based on surmise, speculation, conjecture, or guess." (*Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656].) Finally, "in order for the Board to rely upon a physician's evaluation as to apportionment under section 4750, 'the physician must disclose adequate familiarity with the preexisting disability.' [Citation.] That is, the physician must describe in detail the exact nature of the preexisting disability and the basis for such opinion in order that the Board be able to determine whether the

physician is properly apportioning under correct legal principles." (*Callahan* v. *Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 621, 630 [149 Cal.Rptr. 647].)

■ By these standards, the medical reports relied upon by the board cannot serve as substantial evidence in support of its conclusion. Neither physician claims on the basis of medical evidence that a patient cannot rehabilitate himself from the type of injury which petitioner suffered in 1965, or from the effects of the operation which was performed; and neither physician disputes the evidence offered by petitioner that he in fact did so. Here as in *Amico*, where the facts were quite similar, "[t]he fact that this applicant made a better recovery than he had a right to expect from his first operation should not place him in a position inferior to that of a fellow worker whose industrially caused disability is compounded by the existence of a pathological condition which was previously asymptomatic." (*Amico, supra*, 43 Cal. App.3d at p. 606.)

The award is annulled and the case is remanded to the Workers' Compensation Appeals Board for further proceedings consistent with this opinion.

Racanelli, P. J., and Newsom, J., concurred.