[Civ. No. 62215. Second Dist., Div. Four. Dec. 22, 1981.]

RUFUS V. CALHOUN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and CITY OF
LOS ANGELES, Respondents.

COUNSEL

Silver, McWilliams & Booth and Bernard Katzman for Petitioner.

Burt Pines, City Attorney, H. John Wittorff, Assistant City Attorney, and Ramon V. Poole, Deputy City Attorney, for Respondents.

OPINION

WOODS, J.—The sole issue presented herein is whether the Workers' Compensation Appeals Board properly apportioned part of the petitioner's overall hypertension and cardiac disability to nonindustrial causes.

I

Petitioner, Rufus V. Calhoun, (hereinafter applicant) sustained an injury resulting in hypertension and cardiac disability arising out of and occurring in the course of his employment as a heavy equipment opera-

tor for respondent, City of Los Angeles, during the period April 1, 1961 through October 29, 1971. There is no dispute that the applicant sustained industrial cumulative injury as a result of his employment. There is also no dispute that the applicant's overall disability is 77 percent permanent disability.

The workers' compensation judge apportioned 70 percent of the applicant's disability to nonindustrial causes, which resulted in a permanent partial disability rating of 23 percent. The judge based his finding of 70 percent nonindustrial apportionment upon the report of the agreed medical examiner, Morton Kritzer, M.D., dated December 31, 1977.

In his original report dated November 12, 1974, Dr. Kritzer stated, with regard to disability and apportionment: "... I think that this patient has coronary artery heart disease. I also know that he has essential hypertension and his hypertension has contributed to his heart disease giving him some hypertensive heart disease .... I think his cardiovascular status presents a permanent and stationary disability and I think it would prevent him from doing anything more than light work. I think he could do light work however....

"I do believe there was an occupational aggravation to account for his present disability, but I don't think this would be very great. The patient has known diabetes and he has known hypertension. I think his hypertension was certainly aggravated by the stressful work which he did; he has increased his arteriosclerosis and caused his present disability from same. I think occupational aggravation is about 30 per cent, 70 per cent having nothing to do with this.

"The patient has hypertension and has had it at least since 1969. He certainly did not have it in 1965. I think the hypertension was aggravated by the work that he was doing particularly some of the emotional problems in working in traffic and some of the heavy work that he did with his moving equipment. The aggravation of his hypertension alone I think amounted to 40 per cent, 60 per cent being due to the factors which caused essential hypertension and has nothing to do with his occupation. The hypertension itself carries with it a prophylactic disability in that he should not do strenuous work or be in an emotionally trying environment. Incidentally, I do believe this same type of disability, namely, not to be in an emotionally trying environment applies as well to his cardiovascular disease noted in the prior paragraph...."

In his report of December 31, 1977, Dr. Kritzer stated, with regard to apportionment: "... His hypertension remained essentially as it had been before and I think it has not changed particularly. I still believe that the disability is permanent and stationary; that the disability consists of the fact that he should not do strenuous work, that he should not work in emotionally trying situations. I still believe that the minor portion of his problems have been occupationally aggravated, namely about 40%. The need for medical care is the same. He is taking medication and will have to be watched. . . .

"The patient's cardiac status at least symptom wise remains the same as it has been before. It should be noted that he is on a very limited exercise regimen. His stress treadmill test according to Dr. Stivelman seems to have deteriorated since his last visit here. This really has nothing to do with his occupation but it has to do possibly with the progression of his disease. I think with this type of stress treadmill test that the patient cannot do more than semisedentary work and he should not work in emotionally trying situations. The occupational contribution remains the same, minor, 30%. 70% has nothing to do with his occupation. The condition is deteriorating but at a rather slow rate. . . ."

Neither party requested cross-examination of Dr. Kritzer on either of these medical reports. On September 4, 1979, the workers' compensation judge issued his decision finding 70 percent apportionment of the permanent disability as nonindustrial.

Applicant then petitioned for reconsideration. Granting reconsideration, the Workers' Compensation Appeals Board (hereinafter Board) directed further clarification be obtained from Dr. Kritzer. The Board stated in its opinion and order granting reconsideration: "The gravamen of applicant's contention is that the apportionment set forth by Dr. Kritzer was based upon an incorrect legal theory. . . .

"Upon review of Dr. Kritzer's opinion, the Board has concluded that applicant's contention may be of merit. The medical evidence must be based upon the probability that part of the disability either existed before the injury or would have resulted in the absence of the industrial injury and further must include facts or opinion as to what the disability would have been in the absence of the industrial injury. *Berry* v. *WCAB* (1968), 68 Cal.2d 786, 33 CCC 352; *Zemke* v. *WCAB* (1968), 33 CCC 358. The Board is persuaded that a supplemental report from Dr. Kritzer is necessary.

"The Board believes that additional evidence is required to resolve the issue of apportionment. The Board may not leave undeveloped matters which it identifies as requiring further evidence. *Raymond Plastering* v. *WCAB* (1967), [252] Cal.App.2d 748, 32 CCC 287. This is, therefore, an appropriate case for the Board to exercise its discretion to direct receipt of additional evidence. *Lundberg* v. *WCAB* (1968), 69 Cal.2d 436, 33 CCC 656. The Board will request a supplemental report from Dr. Kritzer requesting him to describe what disability applicant would now have absent the industrial injury. . . ."

In response to this request, Dr. Kritzer filed his report of March 1, 1980, which purported to clarify the apportionment problem. The report stated in pertinent part:

"First, I have always been somewhat at a loss to denote one disability as against another. Since I feel that the greater disability had to do with his heart, namely that he is relegated to semisedentary work, it would actually include the lesser disability due to his hypertension, namely that if he had hypertension alone, he should not do strenuous work but could do up to that. I don't believe I can answer your question what his disability would be if I were to take away the portion of his hypertension which was industrially related. Now, insofar as the cardiac disability, this is extremely difficult for me or any other physician to define, in other words, at the time I saw him, I felt he had a certain disability. In encompassing the entire past history that was given to me, his physical findings, my 2 examinations, all the intervening examinations, his working history, I felt that at the time I saw him, his disability was to a certain extent caused by his occupation, but there was a multifactorial problem in the occupation. This does not necessarily follow that if he was not occupied, he would have 30% less disability because to be absolutely factual about this, I don't really know what 30% less disability would be in your terms. My only feeling would be perhaps that if the patient had not had an occupational aggravation, he could, at the time I saw him, do more work, namely, he would be in a classification where he could do light work rather than semisedentary work. This is just a vague and general statement that I could possibly made [*sic*] without much factual backing because factually speaking, I don't know exactly how all the various factors of his occupation could be modified which feeds into this disability. For your purposes and to the best of my knowledge, I would have to state that his cardiac disability would probably be less if he did not have the occupational aggravation and the nearest I can get to it with your particular Worker's Com-

pensation classification is that he would move up from a semisedentary disability to a disability that relegates him to light work. This, however, as I have noted to you is an extremely rough estimate.

"I trust this answers your questions and if I can be of any further help, please do not hesitate to call upon me. I could not possibly tell you what disability the patient would have if his occupational aggravation of his high blood pressure had not occurred. It would just become, medically speaking, pure surmise and conjecture for many of the reasons that I have noted under his cardiac disability."

Again, neither party requested cross-examination of Dr. Kritzer. After further proceedings, the Board affirmed the 23 percent permanent disability rating.[1] The Board rejected applicant's motion to strike the apportionment on the grounds that, even in his most recent report, Dr. Kritzer "neither set forth what applicant's pre-existing disability was or what the nature of the progressive disease was" and that Dr. Kritzer's apportionment was "based upon a retro-active prophylactic restriction as well as apportionment to pathology."

Applicant now seeks review of the finding of apportionment to nonindustrial disability.

## II

The burden of proof with respect to apportionment to nonindustrial disability was upon the City of Los Angeles. (*Pullman Kellogg* v. *Workers' Comp. Appeals Bd.* (1980) 26 Cal.3d 450, 456 [161 Cal. Rptr. 783, 605 P.2d 422]; see also *Robinson* v. *Workers' Comp. Appeals Bd.* (1981) 114 Cal.App.3d 593, 603 [171 Cal.Rptr. 48]; *Aliano* v. *Workers' Comp. Appeals Bd.* (1979) 100 Cal.App.3d 341, 374 [161 Cal.Rptr. 190].)

"The statutes governing apportionment generally are Labor Code sections 4663 and 4750. (See, 2 Hanna, Cal. Law of Employee Injuries & Workmen's Comp. (2d rev. ed. 1979) §§ 14.03, 14.04; Mastoris, Summary of 1978 Cal. Workers' Compensation Law (1979) pp. 66-

---

[1] Actually, the Board on reconsideration calculated the apportioned industrial disability to be only 19 percent permanent partial disability, but awarded applicant 23 percent since the City had not objected to an award by the workers' compensation judge of permanent disability in that amount. (Lab. Code, § 5904.)

69.)" (*Gay* v. *Workers' Comp. Appeals Bd.* (1979) 96 Cal.App.3d 555, 561, fns. omitted [158 Cal.Rptr. 137].)

Labor Code section 4663 provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributable to the injury."

Labor Code section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

■ "Under both Labor Code section 4663 and section 4750 the employer is liable to the extent the industrial injury accelerates, aggravates or 'lights up' the preexisting disability, condition or impairment." (*Gay* v. *Workers' Comp. Appeals Bd., supra*, 96 Cal.App.3d at p. 561.)

■ "In apportioning under Labor Code section 4663 it must be shown that the apportioned percentage of nonindustrial permanent disability would have resulted at present even in absence of the industrial injury. (*Duthie* [v. *Workers' Comp. Appeals Bd.*], *supra*, 86 Cal.App. 3d at pp. 727-731 [150 Cal.Rptr. 530]; *Franklin* [v. *Workers' Comp. Appeals Bd.*], *supra*, 79 Cal.App.3d at pp. 242-247 [145 Cal.Rptr. 22].) The issue is what in fact is the cause of the *present disability* rather than what are the hypothetical causes of a disability that might occur at some indefinite time in the future. (*Duthie, supra*, 86 Cal. App.3d at p. 728; *Franklin, supra*, 79 Cal.App.3d at p. 243.) Thus, to support apportionment of nonindustrial disability under Labor Code section 4663, there must be medical evidence expressly stating that the apportioned disability is the result of the natural progression of the preexisting nonindustrial condition and such nonindustrial disability would have occurred even in absence of the industrial injury. (*Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794 [69 Cal.Rptr. 88, 441 P.2d 928]; *Duthie, supra*, 86 Cal.App.3d at pp. 728-730.) [Accordingly, where the physician] does not explain apportionment in terms of the proper legal standard of section 4663, there can be no apportion-

ment based upon this section,... (*Dorman* [v. *Workers' Comp. Appeals Bd.*], *supra*, 78 Cal.App.3d at p. 1018 [144 Cal.Rptr. 573].)" (*Gay* v. *Workers' Comp. Appeals Bd., supra*, 96 Cal.App.3d at p. 562.)

■ As the Supreme Court stated in *Pullman Kellogg, supra*: "In applying [Labor Code section 4663], the board must allow compensation not only for the disability resulting solely from the employment, but also for that which results from the acceleration, aggravation, or 'lighting up' of a prior nondisabling disease. Apportionment is justified only if the board finds that part of the disability would have resulted from the normal progress of the underlying nonindustrial disease. The question of apportionment is one of fact, and in making its determination, the board must rely on substantial evidence. Apportionment is not justified on the basis of a medical report not consistent with the principles stated above. [Citation.]

"[Further], [i]t is disability resulting from, rather than a cause of, a disease which is the proper subject of apportionment; 'pathology' may not be apportioned." (*Pullman Kellogg* v. *Workers' Comp. Appeals Bd., supra*, 26 Cal.3d at p. 454.)

■ "'[I]n order for the Board to rely upon a physician's evaluation as to apportionment under [Labor Code] section 4750,[2] "the physician must disclose adequate familiarity with the preexisting disability." (*Dorman, supra*, 78 Cal.App.3d 1009, 1018.) That is, the physician must describe in detail the exact nature of the preexisting disability and the basis for such an opinion in order that the Board be able to determine whether the physician is properly apportioning under correct legal principles.' (*Callahan, supra*, 85 Cal.App.3d at p. 630.) Thus, in order to apportion ... permanent disability to a preexisting disability or impairment under section 4750, [the physician] should have translated how his apportionment figure fits into the nature of alleged preexisting ... condition. (*Ibid.*)" (*Gay* v. *Workers' Comp. Appeals Bd., supra*, 96 Cal.App.3d at p. 562.)

■ Finally, apportionment may not be based upon pure speculation, conjecture or guess by the reporting physician. (*Zemke* v. *Workmen's*

---

[2]For a detailed discussion of the distinctions between Labor Code sections 4663 and 4750, see *Franklin* v. *Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224, 235-250 [145 Cal.Rptr. 22], and *Callahan* v. *Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 621, 628-630 [149 Cal.Rptr. 647].

*Comp. App. Bd.* (1968) 68 Cal.2d 794 [69 Cal.Rptr. 88, 441 P.2d 928]; *Berry* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 786 [69 Cal. Rptr. 68, 441 P.2d 908].) A bare legal conclusion on apportionment or a statement to be "fair" to the parties are also insufficient. (*Zemke* v. *Workmen's Comp. App. Bd., supra*, 68 Cal.2d at p. 798.) Rather, "the physician's entire report and testimony when considered as a whole, must demonstrate that, based upon reasonable medical probability, there is a legal basis for apportionment. [Citations.]" (*Gay* v. *Workers' Comp. Appeals Bd., supra*, 96 Cal.App.3d at p. 564.)

■ A review of Dr. Kritzer's report of March 1, 1980, upon which the Board relied in making its finding on apportionment, fails to demonstrate that Dr. Kritzer's apportionment of the cardiac disability was based upon reasonable medical probability. Rather, Dr. Kritzer was merely giving his "feeling" about apportionment, and even he readily admitted that his apportionment "is just a vague and general statement that [he] could possibly made [*sic*] without much factual backing because factually speaking, [he didn't] know exactly how all the various factors of [applicant's] occupation could be modified which feeds into this disability."

It is not inappropriate for a physician apportioning heart disability to state the apportionment in legal terms, based on the rating schedule; the apportionment is legally inadequate, however, if, as here, the physician fails to justify with substantial medical evidence the selection of that plateau of disability.

The report before us is devoid of medical evidence supporting either prior disability or the extent of disability attributable solely to the natural progression of applicant's disease process. Accordingly, Dr. Kritzer's opinion on apportionment of the cardiac disability of Mr. Calhoun is legally insufficient to justify the finding of the Board that part of this disability was nonindustrial.[3]

---

[3]It should be noted that even if we had found Dr. Kritzer's apportionment to be legally correct, it was improperly applied. In his March 1, 1980 report, Dr. Kritzer indicated that apportionment to nonindustrial disability of the hypertension was impossible. Therefore, all of the hypertensive permanent disability should have been rated as industrial and the apportionment would have applied only to the cardiac disability in accordance with the procedure outlined in *Franklin* v. *Workers' Comp. Appeals Bd., supra*, 79 Cal.App.3d at pages 248-250. (See also *Morgan* v. *Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 710 [149 Cal.Rptr. 736].)

The city having failed in its burden of proof, the Board's finding with respect to apportionment is annulled. The matter is remanded to the Board with directions to provide applicant with an unapportioned award of 77 percent permanent disability and the appropriate life pension incident thereto.

Kingsley, Acting P. J., and McClosky, J., concurred.