[No. B050278. Second Dist., Div. Seven. July 3, 1991.]

JEWELL KING, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and LYNWOOD
UNIFIED SCHOOL DISTRICT, Respondents.

COUNSEL

Owen A. Silverman and Earl M. Hyman for Petitioner.

William B. Donohoe, Neil P. Sullivan, Johnson, Rifenbark & Wylie and Kelley R. Davis for Respondents.

OPINION

JOHNSON, J.—We review a decision of respondent Workers' Compensation Appeals Board (Board) that 70 percent of applicant's cardiovascular and psychiatric disability should be apportioned to preexisting disability. Because we conclude the employer failed to meet its burden of proving applicant had preexisting cardiovascular and psychiatric disability, we will annul the Board's order denying reconsideration.

## FACTUAL AND PROCEDURAL BACKGROUND

Applicant claimed she sustained cumulative industrial orthopedic, psychiatric, and cardiovascular injury during the December 3, 1983, through December 4, 1984, period of her employment as a cook by Lynwood Unified School District.

In 1983 the employer hired a new administrator, Shirley Webb. Applicant testified she experienced stress at work because Ms. Webb increased applicant's duties, verbally harassed applicant, and repeatedly threatened to fire applicant. Applicant claimed she developed chest pain and depression as a result of the work-related stress. She denied having those physical and emotional difficulties before 1983. In December 1984 applicant's age was 57. Applicant testified that in 1984 she separated from her husband and lost her house.

Dr. Thomas Curtis, a psychiatrist, opined applicant had a dysthymic disorder. Dr. Curtis reported applicant had "no past psychiatric history of importance." He noted records from Kaiser revealed applicant was diagnosed as having hypertension in May 1977. Dr. Curtis stated that in September 1977 applicant had been diagnosed as having "hypertensive cardiac vascular disease with mild congestive heart failure intermittently" and had been prescribed medication to treat the hypertension and cardiac condition.

Dr. Curtis opined applicant had slight to moderate psychiatric disability because of work-related stress. He concluded applicant had no preexisting personality or other mental disorder, there was no nonindustrial causation, and thus there was no basis for apportionment of the psychiatric disability.

In a subsequent report Dr. Curtis stated that before Ms. Webb was hired, applicant's work performance was good and her preexisting hypertension and congestive heart failure did not interfere with her work. Dr. Curtis reported that the symptoms associated with those disorders were largely transitory and did not contribute to applicant's depression.

Dr. Dean Wiese, an internist, noted that applicant was treated for hypertension and congestive heart failure in 1980 and 1982. He stated that in 1982 the hypertension was uncontrolled. He concluded applicant's cardiovascular condition precluded heavy work and emotional stress.

Dr. Robert Faguet, a psychiatrist, concluded applicant had major depression. Dr. Faguet reported that in April 1977 applicant was diagnosed as having essential hypertension and cardiomegaly. He stated her medical records indicated she had complained at that time of headaches, dizziness,

blackouts, and shortness of breath. Stating Ms. Webb became applicant's supervisor in mid-1984 and applicant's personnel records disclosed her employment difficulties preceded the middle of 1984, Dr. Faguet concluded the employment did not cause or contribute to applicant's permanent psychiatric disability.

Dr. Cranford L. Scott, the independent medical examiner in internal medicine, reported that applicant had been treated for hypertension since 1977 but she had no problems at work until Ms. Webb was hired in June 1983. Dr. Scott concluded applicant's conflict with and harassment by Ms. Webb exacerbated applicant's preexisting hypertension, causing shortness of breath, dizziness, and fatigue. He explained that although the hypertension was medically out of control before Ms. Webb was hired, applicant was previously able to cope with the hypertension without difficulty. Dr. Scott recommended that applicant be permanently limited to light work with a minimum of physical effort and no stress. He attributed 70 percent of the hypertensive cardiovascular disability to applicant's preexisting hypertensive cardiovascular disorder.

On deposition,[1] Dr. Scott stated applicant did not take her antihypertensive medication when she felt well. Dr. Scott testified that if he had examined applicant in 1977, he would have recommended that she avoid stress. He stated that if hypertension is untreated, it will have "accelerated effects." When Dr. Scott was asked whether he could state how rapidly applicant's hypertension and hypertensive cardiovascular disease would have progressed in the absence of industrial stress, he replied: "In view of the fact that there can be a variation in rate of aggression [*sic*] amongst individuals, she is 60 years of age now and at age 55 we know that females as they go into menopause there is a worsening of their hypertentsion [*sic*] as a consequence of their hormonal changes that they have. As to what degree, it is difficult to say how much[.] We would say that there would be some advancement. How much you really would not be able to scientifically say." Dr. Scott stated he based his apportionment recommendation on the existence of preexisting hypertension and hypertensive heart disease.

The WCJ found applicant sustained cumulative industrial cardiovascular and psychiatric injury during the December 3, 1983, through December 3,

---

[1]Although the transcript of Dr. Scott's deposition was not formally received in evidence by the Board, the parties stipulated Dr. Scott's deposition transcript would be included as part of the record, the workers' compensation judge (WCJ) relied on Dr. Scott's deposition testimony in his report on reconsideration, and the Board adopted the WCJ's report. Based on the Board's request in its letter filed March 28, 1991, to which none of the other parties has objected, we deem the copy of Dr. Scott's deposition transcript attached to the petition for writ of review to be part of the Board's record. (Cf. Cal. Code Regs., tit. 8, ch. 4.5, § 10722 [reports of independent medical examiners deemed in evidence when filed and served].)

1984, period of her employment and the injury resulted in 29 percent permanent disability after apportionment. The WCJ did not state whether he apportioned permanent disability to natural progression of a preexisting disease or to preexisting disability. The WCJ explained his apportionment decision as follows: "Apportionment of 70% of the applicant's cardiovascular and psychiatric disability is based upon the evidence which shows that the applicant was not subjected to emotional stress and strain on the job until 1983, when a new administrator, Shirley Webb, started at the employer. There is medical evidence that the applicant has suffered from nonindustrial hypertension and cardiovascular disease since 1977. There is documentation that the applicant has a history of non-industrial medical problems, for which she was treated at Kaiser Permanente Medical Group, and financial and marital problems including a 1984 separation from her husband and loss of her home."

Applicant petitioned for reconsideration.

In the report on reconsideration, the WCJ stated applicant had preexisting disability from hypertension before she experienced work-related stress. The WCJ concluded Dr. Scott's apportionment recommendation for the cardiovascular disability was reasonable. The WCJ then stated: "It is felt that the applicant's psychiatric disability should be apportioned using the percentages stated by Dr. Scott since the same job stress and strain history is present with the applicant having a long history of non-industrial emotional problems."

In a two-to-one decision, the Board adopted the WCJ's report and denied reconsideration. The dissenting Board panel member did not file an opinion.

## DISCUSSION

Labor Code section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

For a physician's evaluation to support apportionment under Labor Code section 4750, the physician must describe in detail the exact nature of the preexisting disability and the basis for his opinion. (*Ditler* v. *Workers'*

*Comp. Appeals Bd.* (1982) 131 Cal.App.3d 803, 812 [182 Cal.Rptr. 839]; *Calhoun* v. *Workers' Comp. Appeals Bd.* (1981) 127 Cal.App.3d 1, 10 [179 Cal.Rptr. 198]; *Callahan* v. *Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 621, 630 [149 Cal.Rptr. 647].) The preexisting disability must have been labor-disabling. (*Ditler, supra,* 131 Cal.App.3d at p. 813.) Evidence of preexisting disability may consist of complaints to coworkers or physicians before the industrial injury, treatment to the same part of the body before the industrial injury, or measurable preexisting loss of functioning. (*Id.* at p. 815, fn. 8.) The preexisting condition need not have caused disability in the occupation in which the worker was employed. (*Id.* at p. 813; *Franklin* v. *Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224, 238 [145 Cal.Rptr. 22].) A finding of preexisting disability may be based on evidence the condition would have interfered with other work activity before the industrial injury. (*Ibid.*) However, a prophylactic work restriction may not be applied retrospectively to create a factual or legal fiction of preexisting disability. (*Ditler, supra,* 131 Cal.App.3d at p. 814; *Robinson* v. *Workers' Comp. Appeals Bd.* (1981) 114 Cal.App.3d 593, 602 [171 Cal.Rptr. 48]; *Franklin, supra,* 79 Cal.App.3d at p. 238.) Apportionment may not be based merely on pathology. (*Callahan* v. *Workers' Comp. Appeals Bd., supra,* 85 Cal.App.3d at p. 631.)

In the present case, although there was evidence of preexisting pathology, there was no evidence applicant's preexisting hypertension or cardiovascular condition was actually labor-disabling before the industrial injury.[2] Dr. Scott's statement he would have recommended applicant avoid stress if he had examined her in 1977 is merely a retroactive prophylactic work restriction and does not support the apportionment to preexisting disability. (See *Ditler* v. *Workers' Comp. Appeals Bd., supra,* 131 Cal.App.3d at pp. 814-815; *Callahan* v. *Workers' Comp. Appeals Bd., supra,* 85 Cal.App.3d at p. 631; *Franklin* v. *Workers' Comp. Appeals Bd., supra,* 79 Cal.App.3d at p. 238.) Apportionment to preexisting disability may not be based on speculation. (*Calhoun* v. *Workers' Comp. Appeals Bd., supra,* 127 Cal.App.3d at pp. 10-11.) Dr. Scott based his apportionment recommendation on pathology and made no finding of preexisting disability. The Board erred in relying on Dr. Scott's opinion in support of its finding that 70 percent of the cardiovascular disability should be apportioned to preexisting disability.

The apportionment to preexisting psychiatric disability is unsupported by substantial evidence. Although the Board may base a finding as to the percentage of permanent disability on the range of the medical evidence

---

[2] At oral argument, respondent Lynwood Unified School District conceded applicant had no preexisting labor-disabling hypertensive or cardiovascular disability. However, the Board contends applicant had preexisting hypertensive disability.

(*U.S. Auto Stores* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 469, 474-475 [93 Cal.Rptr. 575, 482 P.2d 199]), the Board may not rely on medical evidence that the disability is entirely nonindustrial to support an apportionment finding. (See *Berry* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 786, 792 [69 Cal.Rptr. 68, 441 P.2d 908].) Thus, Dr. Faguet's opinion does not support the apportionment of 70 percent of the psychiatric permanent disability to preexisting disability. Contrary to the statement in the WCJ's report on reconsideration, the record does not contain a history of preexisting nonindustrial emotional problems. Dr. Faguet's finding of nonindustrial psychiatric disability was based on his mistaken belief that the industrial stress began in the middle of 1984, rather than 1983, as found by the WCJ. A medical opinion based on an incorrect history does not constitute substantial evidence. (See *Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 169 [93 Cal.Rptr. 15, 480 P.2d 967]; *Berry* v. *Workmen's Comp. App. Bd.*, *supra*, 68 Cal.2d at p. 792.)

Thus, substantial evidence does not support the Board's apportionment under Labor Code section 4750.

Labor Code section 4663 provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

■ Apportionment is justified under Labor Code section 4663 only if the Board finds part of the disability would have resulted from the normal progress of an underlying nonindustrial disease. (*Pullman Kellogg* v. *Workers' Comp. Appeals Bd.* (1980) 26 Cal.3d 450, 454 [161 Cal.Rptr. 783, 605 P.2d 422].) "It is disability resulting from, rather than a cause of, a disease which is the proper subject of apportionment; 'pathology' may not be apportioned. [Citations.]" (*Ibid.*) There must be medical evidence expressly stating that the apportioned disability is the result of the natural progression of a preexisting, nonindustrial condition and such nonindustrial disability would have occurred in the absence of the industrial injury. (*Ditler* v. *Workers' Comp. Appeals Bd.*, *supra*, 131 Cal.App.3d at p. 812; *Gay* v. *Workers' Comp. Appeals Bd.* (1979) 96 Cal.App.3d 555, 562 [158 Cal.Rptr. 137].) Apportionment under Labor Code section 4663 may not be based on speculation as to the hypothetical causes of a disability that might occur at some indefinite time in the future. (*Calhoun* v. *Workers' Comp. Appeals Bd.*, *supra*, 127 Cal.App.3d at p. 9; *Gay* v. *Workers' Comp. Appeals Bd.*, *supra*, 96 Cal.App.3d at p. 562.) ■ Dr. Scott's general statement that, absent the employment, the hypertension would have advanced during menopause falls far short of the specificity required to support apportionment to natural progression of a preexisting condition. Neither the opinion of Dr. Scott, the

opinion of Dr. Faguet, nor other medical evidence in the present case could support findings that part of the cardiovascular and psychiatric permanent disability should be apportioned to natural progression of preexisting conditions. (See *Pullman Kellogg* v. *Workers' Comp. Appeals Bd.*, *supra*, 26 Cal.3d at p. 454; *Berry* v. *Workmen's Comp. App. Bd.*, *supra*, 68 Cal.2d at p. 792; *Ditler* v. *Workers' Comp. Appeals Bd.*, *supra*, 131 Cal.App.3d at pp. 811-812; *Calhoun* v. *Workers' Comp. Appeals Bd.*, *supra*, 127 Cal.App.3d at p. 9.)

■ When the Board grants reconsideration, it has the power to direct the taking of additional evidence. (Lab. Code, §§ 5701, 5906; *Lundberg* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 436, 440 [71 Cal.Rptr. 684, 445 P.2d 300] [Board may resolve doubts as to employer's liability by requiring employee to be examined by physician and otherwise directing the taking of additional evidence]; *Raymond Plastering* v. *Workmen's Comp. App. Bd.* (1967) 252 Cal.App.2d 748, 753 [60 Cal.Rptr. 860] [Board "may not leave undeveloped matters which its acquired specialized knowledge should identify as requiring further evidence"].) Upon remand from this court in the present case, the Board may decide the employer has had an adequate opportunity to meet its burden of proof on apportionment and may therefore enter an award denying any apportionment. Alternatively, the Board may conclude the record should be further developed on one or more of the apportionment issues and may direct the taking of further evidence on apportionment. The matter will be remanded to enable the Board to exercise its discretion in this regard.

### DISPOSITION

The April 11, 1990, order of respondent Workers' Compensation Appeals Board denying reconsideration is annulled, and the matter is remanded to the Board for further proceedings consistent with the views expressed herein. Petitioner shall recover her appellate costs.

Lillie, P. J., and Woods (Fred), J., concurred.