[No. A064844. First Dist., Div. Four. Sept. 20, 1994.]

EDWARD SCHMIDT, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and CITY AND
COUNTY OF SAN FRANCISCO, Respondents.

COUNSEL

Joseph C. Waxman for Petitioner.

Louise H. Renne, City Attorney, and Rebecca Y. Liu, Deputy City Attorney, for Respondents.

OPINION

**POCHÉ, Acting P. J.**—We review a decision of respondent Workers' Compensation Appeals Board (Board) that 80 percent of petitioner's permanent disability should be apportioned to preexisting disability. Because we agree with petitioner that the evidence does not support apportionment, we will annul the Board's order after reconsideration.

### FACTUAL AND PROCEDURAL HISTORY

Petitioner's employment with respondent City and County of San Francisco (city) commenced in approximately 1974. In 1980, he was a firefighter when he experienced back pain while lifting a large hose. He was off work about six weeks. When he returned to work, he returned as an airport police officer, a position he held before his firefighting position. When getting up from a chair while at work in 1986 and again in 1988, he experienced pain and spasm in his lower back. He was treated for each of these incidents and the symptoms subsided. No work restrictions followed these incidents of back pain.

On December 16, 1989, petitioner experienced an acute episode of back pain when he bent over at a drinking fountain at work. He was treated by Dr. Owen who on one or two occasions recommended that he return to light work with limited lifting and without wearing a gun belt, but petitioner's

supervisor would not accept him with these restrictions. Instead, he was sent to Dr. Castaneda who opined on July 9, 1990, that petitioner was incapable of returning to his usual and customary work.

On September 10, 1990, petitioner filed a workers' compensation claim for the injury to his back which occurred on December 16, 1989. Dr. Chan reported on June 28, 1991, that petitioner had a herniated disc and was permanent and stationary for rating purposes and recommended no apportionment of permanent disability. He explained: "His current disabilities are entirely the result of the injury he sustained on 16 DEC 89. Despite the fact that he had several previous injuries to the low back, they were all minor. After adequate medical treatment he fully recovered and was able to return to work with no restrictions. He was also able to return to his normal recreational activities, including weight lifting. Therefore, no apportionment is necessary."

A surveillance tape of petitioner was taken and reviewed by Dr. Chan and Dr. Owen. Dr. Owen, who had been following petitioner's condition, stated that the tapes changed his opinion as to the extent of petitioner's back problem. Dr. Chan, on the other hand, found "very little information in the tape that is inconsistent with what Mr. Schmidt can and cannot do. Even with a herniated lumbar disc in the low back, Mr. Schmidt has never claimed that he cannot engage in activities such as standing, walking, climbing stairs, carrying a cooler which weighed about 15 pounds or wading in water at the beach. [¶] As to the '. . . work out at a health club,' I believe that Mr. Schmidt is doing rehabilitative back exercises that have been encouraged by his physical therapist as well as his attending physician's. He also found it helpful to stretch to overcome stiffness and weakness. . . . With a herniated lumbar disc in the low back, activities such as heavy lifting and carrying, repeated bending and stooping, or other activities that might be harmful or injurious to his lumbar disc are the ones to be discouraged but not rehabilitative back exercises."

Hearing was held before a workers' compensation judge (WCJ) on May 1, 1992, and again on June 25, 1992. The WCJ found permanent disability of 33½ percent with no apportionment.

The City petitioned for reconsideration. The City argued that the opinion of Dr. Chan was not substantial evidence because it was based on inaccurate information from petitioner who was not candid about his weightlifting. "Applicant's secret weightlifting program confirms the treating physician's suspicions—present since June 1990—of elaboration of symptoms."

The WCJ recommended against reconsideration. The Board, however, granted reconsideration in order to refer petitioner to an independent medical

examiner and appointed Dr. Gwilym Lewis for this purpose. Dr. Lewis reported in writing on March 18, 1993. He found the same herniated disc as did the other doctors and agreed with a disability rating precluding heavy work. In a section labeled "Apportionment," Dr. Lewis wrote: "Based upon his verbal history as well as the records of Dr. Owen in my opinion, there is a basis for apportionment. I consider probable that the back injury while working as a Fireman in 1980 was the basic and initial cause of the disc problem. Each one of the subsequent events aggravated the condition to some extent. I would concur with Dr. Owen and Dr. Castaneda that 80% of his disability is due to injuries which occurred in his work prior to 1989 and 20% to the aggravation which occurred with the injury of December of 1989."[1]

In his deposition on July 15, 1993, Dr. Lewis reiterated the above opinion. He considered that the herniation initially occurred in 1980 and that each episode at work following this pushed the disc out a little further. When asked his opinion of the effect of petitioner's recreational weightlifting, Dr. Lewis expressed his opinion that weightlifting is not "good for discs or backs in general" and that weightlifting "probably aggravated the condition." However, Dr. Lewis agreed that he could not separate out a percentage of cumulative trauma due to weightlifting from that due to petitioner's work.

Based upon Dr. Lewis's report, a divided Board apportioned 80 percent of petitioner's overall disability to nonindustrial factors. The dissenting member considered that apportionment was not legally valid.

## APPORTIONMENT

 Commissioner Richard Gannon, the dissenting board member, was correct in his assessment that there is no basis in the workers' compensation statutes to relieve the employer of responsibility for 80 percent of the compensation for petitioner's permanent disability to his back.

Apportionment of workers' compensation benefits for conditions preexisting an industrial injury must meet the requirements of either Labor Code section 4750 or Labor Code section 4663. Section 4750 provides: "An employee who is suffering from a previous permanent disability or physical

---

[1]Petitioner filed an application for cumulative trauma benefits to conform to the opinion of Dr. Lewis and submitted it to the WCJ on May 17, 1993, requesting that it be joined with his pending application. A letter was sent by this court to petitioner's attorney inquiring as to the status of the application for cumulative trauma benefits. By letter dated May 27, 1994, the attorney reported that the Board had apparently ignored the application. However, the attorney urged this court not to remand for resolution of this application since the City concurred with the view that no further evidence would be needed.

impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment."

█ The preexisting disability under Labor Code section 4750 must be labor-disabling. (*King* v. *Workers' Comp. Appeals Bd.* (1991) 231 Cal.App.3d 1640, 1647 [283 Cal.Rptr. 98]; *Ditler* v. *Workers' Comp. Appeals Bd.* (1982) 131 Cal.App.3d 803, 813 [182 Cal.Rptr. 839].) █ There was no evidence that petitioner's ability to work was impaired prior to the injury on December 16, 1989. Consequently, the Board did not apportion under this statute but under Labor Code section 4663.

Labor Code section 4663 provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

█ "Apportionment is justified under Labor Code section 4663 only if the Board finds part of the disability would have resulted from the normal progress of an underlying nonindustrial disease. [Citation.] 'It is disability resulting from, rather than a cause of, a disease which is the proper subject of apportionment; "pathology" may not be apportioned. [Citations.]' [Citation.] There must be medical evidence expressly stating that the apportioned disability is the result of the natural progression of a preexisting, nonindustrial condition and such nonindustrial disability would have occurred in the absence of the industrial injury. [Citations.] Apportionment under Labor Code section 4663 may not be based on speculation as to the hypothetical causes of a disability that might occur at some indefinite time in the future. [Citations.]" (*King* v. *Workers' Comp. Appeals Bd.*, *supra*, 231 Cal.App.3d at p. 1648.)

█ The Board points to the fact that Dr. Lewis stated that petitioner would have had about 80 percent of his present disability even if the water fountain incident had not occurred. From this the Board inferred that Dr. Lewis was of the opinion that petitioner's pathology would have progressed to cause actual disability (equivalent to 80 percent of his present disability) by the time his industrial injury became permanent. Thus, according to the Board, "Dr. Lewis' opinion satisfied the legal tests for apportionment under Labor Code section 4663."

The City here also points to the following deposition question and answer as its only support for apportionment under Labor Code section 4663: "So is

it fair to say then you think he would have about 80 percent of his present disability now even if that water fountain incident hadn't occurred?" to which Dr. Lewis answered: "Yes, I believe he would have."

Taken in context, Dr. Lewis was stating that by the time of the water fountain incident, herniation of the disc had proceeded 80 percent toward a disabling injury. Dr. Lewis did not state that herniation of the disc was caused by the "natural progression of a preexisting, nonindustrial condition." Dr. Lewis did not even mention an underlying nonindustrial condition. Dr. Lewis was of the opinion that herniation started when petitioner moved a heavy hose during his employment with the City and that each work-related incident thereafter furthered the herniation until the water fountain incident precipitated actual permanent disability. Dr. Lewis was describing a classic cumulative trauma situation and the Board should have dealt with it as such since petitioner had asked that cumulative trauma be considered after he had received Dr. Lewis's report.

Prior to the Board's decision after reconsideration, the City did not even suggest that this was a situation which would justify apportionment. Reconsideration was requested solely on the ground that petitioner was not as physically limited as he professed to be. Dr. Lewis was appointed to examine petitioner and he concluded that, in fact, the permanent disability rating was correct. His opinion on apportionment was not based upon apportionment as it is defined under the workers' compensation statutes but on an incorrect legal theory. Thus it does not provide substantial evidence to support the Board's decision. (Cf. *Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794, 800-801 [69 Cal.Rptr. 88, 441 P.2d 928].)

The award is annulled as it pertains to permanent disability indemnity, and the matter is remanded to the Board for issuance of an award of permanent disability indemnity with no apportionment. Petitioner shall recover his appellate costs.

Perley, J., and Reardon, J., concurred.