[Civ. No. 31354.    Second Dist., Div. Three.    July 24, 1967.]

RAYMOND PLASTERING et al., Petitioners, v. WORKMEN'S COMPENSATION APPEALS BOARD and CLEO KING, Respondents.

McConnell & Cramoline and Britton Drew McConnell for Petitioners.

Everett A. Corten, Edward A. Sarkisian and Sheldon M. Ziff for Respondents.

McCOY, J. pro tem.*—On May 13, 1965, Cleo King, born December 28, 1919, sustained an injury arising out of and in the course of his employment as a plasterer. The injury caused total temporary disability through November 30, 1965, for which he was paid temporary disability benefits at the maximum rate. Award issued for permanent disability benefits of $4,305 payable at the rate of $52.50 per week for 82 weeks. The award is based on a finding that applicant's earnings were maximum for purposes of computing perma- , nent disability benefits. Petitioners contend that the applicant failed to present sufficient evidence on the issue of his earning capacity for a determination of the question. They seek annulment of the award and an order directing the appeals board to take additional evidence on the issue.

At the hearing on April 12, 1966, the applicant testified that he had been a union member from 1940 to 1964 but was not a union member at the time of the injury; he had not filed any income tax returns since 1959 because he had not made enough money to file a return; he was separated from his wife and she did not claim support; his children were grown; he did not know how much he had to earn to require the filing of an income tax return; in 1963 he had worked "quite a bit," about half of the year or maybe more; he worked about three months in 1964; he had not worked a full year in 1964 because he had a nonindustrial back injury; work for plasterers had been slow in 1964; he had dropped his union membership in 1964 because there was no work; he had been working for the employer most of 1965 and was not told how long the job would last; work for plasterers had been slow since late 1965; he was getting $40 a day at the time of

---

*Assigned by the Chairman of the Judicial Council.

his injury and he worked almost every day, five days a week.

The employer's wage statement showed that the applicant began work for the employer on November 5, 1963, that the work was seasonal, that the number of hours worked by the applicant depended upon the amount of work available, that the applicant did not work at all in 1964, and that his rate of pay was $4.94½ per hour. His itemized payroll for 1965 as set forth in footnote 1[1] reflects that he worked steadily from February 18, 1965, to May 26, 1965, a period of 12 weeks. By dividing the applicant's earnings for each week of the 12-week period as shown on the itemized payroll by his rate of pay, it is shown that he worked a varying number of hours in each week. The number of hours varied between 8 hours and 40 hours. The average of total hours for the 12-week period was 25¼ and the average of total earnings for the 12-week period was $124.86.

No evidence was received as to specific prior employment by the applicant, his skill, his health, or his willingness and opportunities to work. No evidence was received which explained his apparently limited earnings from 1959 through 1963. No evidence was received as to what his actual earnings were in 1964. No evidence was received as to the length of time he was actually disabled in 1964.

The appeals board contends that because the applicant worked in excess of 30 hours during the week in which he was injured and because he was not told how long the job would last, it was justified in computing his average weekly earnings in accordance with subdivision (a) of Labor Code section 4453.[2] It further contends that, in any event, the finding of

| [1]From | To | Amount |
|---|---|---|
| 2-18-65 | 2-24-65 | $ 118.68 |
| 2-25-65 | 3-3-65 | 173.08 |
| 3-4-65 | 3-10-65 | 197.80 |
| 3-11-65 | 3-17-65 | 59.34 |
| 3-18-65 | 3-24-65 | 197.80 |
| 3-25-65 | 3-31-65 | 79.12 |
| 4-8-65 | 4-14-65 | 39.56 |
| 4-15-65 | 4-21-65 | 197.80 |
| 4-22-65 | 4-27-65 | 79.12 |
| 5-6-65 | 5-12-65 | 118.68 |
| 5-13-65 | 5-19-65 | 158.24 |
| 5-20-65 | 5-26-65 | 79.12 |

[2]At the time the award was made, the statute provided in pertinent part as follows:

"In computing average annual earnings for purposes of permanent disability indemnity, the average weekly earnings shall be taken at not

maximum weekly average earnings may be sustained on the evidence in the record under the provisions of either subdivision (a) or subdivision (d) of that section.

In 1962 the Supreme Court decided three cases in which the sufficiency of the evidence to support findings of average weekly earnings was questioned. (*Argonaut Ins. Co. v. Industrial Acc. Com.*, 57 Cal.2d 589 [21 Cal.Rptr. 545, 371 P.2d 281]; *California Comp. & Fire Co. v. Industrial Acc. Com.*, 57 Cal.2d 598 [21 Cal.Rptr. 549, 371 P.2d 285]; *California Comp. & Fire Co. v. Industrial Acc. Com.*, 57 Cal.2d 600 [21 Cal.Rptr. 551, 371 P.2d 287].) The first cited case appears factually very similar to the present case. There, Montana, the employee, was fifty years old, had established a pattern of intermittent work that apparently extended over five years, worked as a laborer, usually on construction projects, was generally paid at a high hourly rate, and took any employment offered to him through his union. He had held four jobs during the 15 months prior to his injury. His total earnings over the 15-month period amounted to between $1,200 and $1,300. At the time of injury he had been employed for two months on a flood control project on which he earned $887.20. An award of temporary disability compensation based on maximum earnings was affirmed. An award of permanent disability compensation based on maximum earnings was annulled and the cause remanded for further proceedings.

In the cited case the court recognized that the computation of "average weekly earnings" is, in effect, a prediction of

---

less than thirty dollars and seventy-seven cents ($30.77) nor more than eighty dollars and seventy-seven cents ($80.77). Between these limits the average weekly earnings, except as provided in Sections 4456 to 4459, shall be arrived at as follows:

"(a) Where the employment is for 30 or more hours a week and for five or more working days a week, the average weekly earnings shall be 95 percent of the number of working days a week times the daily earnings at the time of the injury. . . .

"(c) If the earnings are at an irregular rate, such as piecework, or on a commission basis, or are specified to be by the week, month or other period, then the average weekly earnings mentioned in subdivision (a) above shall be taken as 95 percent of the actual weekly earnings averaged for such period of time, not exceeding one year, as may conveniently be taken to determine an average weekly rate of pay.

"(d) Where the employment is for less than 30 hours per week, or where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 95 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his injury, due consideration being given to his actual earnings from all sources and employments."

what the employee's earnings would have been had he not been injured. It noted that subdivisions (a), (b) and (c) of Labor Code section 4453 set forth formulae for making such a determination when an employee is steadily employed at a full-time job, but that when the employment is for less than 30 hours a week or when a formula "cannot reasonably and fairly be applied," the commission must make its own estimate of weekly earning capacity at the time of the injury as provided by subdivision (d). It stated in respect to that subdivision (p. 594) as follows: "The purpose of this provision is to equalize for compensation purposes the position of the full-time, regularly employed worker whose earning capacity is merely a multiple of his daily wage and that of the worker whose wage at the time of injury may be aberrant or otherwise a distorted basis for estimating true earning power. It would hardly be consistent with that purpose to foreclose a worker from a maximum temporary or permanent award simply because a brief recession had forced him to work sporadically or at a low wage. Nor in making a permanent disability award would it be consistent with the purpose of the statute to base a finding of maximum earning capacity solely on a high wage, ignoring irregular employment and low income over a long period of time."

The court further stated in the *Montana* [*Argonaut Ins. Co. v. Industrial Acc. Com.*] case that in making an estimate of the employee's earning capacity under subdivision (d) of Labor Code section 4453 for purposes of making an award of temporary disability benefits the appeals board will ordinarily be concerned with whether an applicant would have continued working at a given wage for the duration of the disability but that for purposes of making a permanent award the long-term earning history of the applicant is a reliable guide although it may be misleading in a variety of fact situations. It further stated (p. 595 [57 Cal.2d]): "With regard to both awards all facts relevant and helpful to making the estimate must be · considered. [Citations.] The applicant's ability to work, his age and health, his willingness and opportunities to work, his skill and education, the general condition of the labor market, and employment opportunities for persons similarly situated are all relevant. [Citations.] In weighing such facts, the commission may make use of ' "its general knowledge as a basis of reasonable forecast." ' [Citations.] In weighing the evidence relevant to earning capacity the commission has the

same range of discretion that it has in apportioning injuries between industrial and nonindustrial causes. [Citation.] It must, however, 'have evidence that will at least demonstrate the reasonableness of the determination made.' (*Davis* v. *Industrial Com. of Arizona*, 82 Ariz. 173 [309 P.2d 793, 795].)''

The court concluded that a finding that the applicant was a permanent employee and that his sporadic employment was caused by business conditions was ambiguous and was in effect merely a finding of the applicant's willingness to work. It held that in the absence of evidence tending to show that the applicant's five lean years were unusual for him, that the construction industry in the area .anticipated a period of prosperity and that the men with similar skills, ages, physical characteristics and earning histories were becoming steadily employed, the commission failed to give due consideration to actual earnings of the applicant as required by subdivision (d).

A review of the evidence received by the appeals board in the present case on the issue of the applicant's earning capacity for purposes of making a permanent disability award compels the conclusion that the statutory formulae to be used when an employee is steadily employed at a full-time job are not appropriate and ''cannot reasonably and fairly be applied.'' (Lab. Code, § 4453, subd. (d).) It is also apparent therefrom that the testimony of the applicant is so vague and lacking in specific detail as to his long-term earning history that it is wholly insufficient to demonstrate the reasonableness of the determination made. We can find in the record no evidence whatever as to the actual earnings of the applicant from all sources and employments prior to the three-month period in which he had received a weekly paycheck from the employer. The referee or appeals board may not leave undeveloped matters which its acquired specialized knowledge should identify as requiring further evidence. (*West* v. *Industrial Acc. Com.*, 79 Cal.App.2d 711, 719 [180 P.2d 972].) The award must be annulled as unreasonable. (Lab. Code, § 5952.) The case is remanded to the appeals board for further proceedings.

Ford, P. J., and Moss, J., concurred.