[No. G003317. Fourth Dist., Div. Three. Mar. 31, 1986.]

POSTURAL THERAPEUTICS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
HOME INSURANCE COMPANY et al., Respondents.

552

**COUNSEL**

Nicholas C. Byhower for Petitioner.

Allen, Rhodes & Sobelsohn, Jack H. Davidson, Richard Pasoto and Charles E. Finster for Respondents.

**OPINION**

**WALLIN, J.—** ▅ Postural Therapeutics (PT) provided physiotherapy to Humberto A. who was injured while employed as a painter by Romero & Sons Painting Contractors. Because Humberto A. refused to produce a medical report, the Workers' Compensation Appeals Board drew an adverse inference that the treatment was for a nonindustrial condition, thus denying

PT's lien. PT seeks a writ of review, contending the appeals board's opinion failed to comply with Labor Code section 5908.5 and the board incorrectly applied a conclusive presumption to deny its lien.

I

Humberto A. fell from a roof on October 7, 1981, while employed as a painter. He fell backwards 10 feet to the ground, striking his head, neck and back and was unconscious for 10 minutes. The first diagnosis of work injury was a brain concussion and severe cervical, thoracic and lumbar strains. He was cared for by Dr. Rose,[1] who prescribed the therapy rendered by PT which is the basis for the lien.

Because of disputes over apportionment, temporary disability and permanent disability, Humberto A. was examined by a psychiatrist and an orthopedic surgeon, both of whom were appointed by agreement of the parties. These doctors issued reports which were reviewed by Dr. Rose. Dr. Rose also reviewed, among others, a report from a Dr. Buehler, a specialist in psychiatry and neurology, dated July 22, 1982, which noted that the patient had a history of latent syphilis. Dr. Rose stated: "I have been informed by the Department of Social Services that I cannot put into writing the findings of this report by Federal Regulation. . . . I have no reason to change my statements in any of my preceding reports based upon the findings in this report."[2]

At trial, Humberto A. refused to produce Buehler's report, claiming it would be a "violation of federal law." The court recessed and sent the parties to the Social Security Administration office where Humberto A. was advised it would not constitute a violation of federal law to produce the report if he signed a release. He refused to sign the release.

The workers' compensation judge (WCJ) found Romero liable for "self-procured medical care in an amount to be adjusted by and between the parties. This is to include adjustment of the lien claim of Postural Therapeutics which claim is $5,190."

Home Insurance Company (Home), Romero's insurer, filed a motion for reconsideration based on the court's failure to draw an adverse inference

---

[1] The record contains reports from several other doctors who treated Humberto A.

[2] PT's brief claims Rose meant Social Security Administration instead of Department of Social Services, because Buehler examined Humberto A. in connection with a claim for disability benefits.

against Humberto A. due to his wilful refusal to produce a relevant medical report.[3] Although Home was required to serve its motion on all adverse parties, it did not serve PT. PT requested the moving papers and received them on May 30, 1984; however, the board had already decided to reconsider. PT then submitted written argument on the merits, contending the therapy it rendered was reasonable and necessary.

In his report on reconsideration, the workers' compensation judge stated he looked up "latent syphilis" in a medical dictionary and found it referred to a stage when no signs or symptoms were present. "Based upon this definition, the entire record was considered, and a reference to a history of latent syphilis was weighed and though an adverse inference to applicant's interest was presumed, the lack of symptoms . . . was therefore considered of little weight." The board found the judge should have presumed the findings, conclusions and opinions in Buehler's report would be completely adverse even as to the existence of symptoms, and remanded the matter for trial.

At trial, the WCJ awarded the full amount of PT's lien. He reasoned Rose's opinion that the treatment was reasonable and necessary predated any knowledge on Rose's part that Humberto A. had had syphilis; thus, the treatment was reasonable at the time it was prescribed. Home made another motion for reconsideration; PT answered, contending Home's first petition for reconsideration should be annulled because Home failed to serve PT with the moving papers as required by statute and board rule.

The board granted the motion for reconsideration, rescinded the findings and award and denied PT's lien. It stated: "[T]he initial issue is not the reasonableness of the treatment but rather whether or not the treatment was for an industrial condition. In this case, an adverse inference must be drawn on that point. Whether or not Dr. Rose knew or did not know about the syphilis at the time he prescribed the treatment is not relevant to the issue of whether or not it was the industrial condition that was treated. Due to the adverse interest [inference] which must be drawn, we conclude that the self-procured medical treatment was for a non-industrial purpose." PT timely filed its petition for writ of review.[4]

---

[3]California Administrative Code, title 8, section 10622 (WCAB Rules) provides in part: "Where a wilful supression of a medical report is shown to exist in violation of these rules, it shall be presumed that the findings, conclusions and opinions therein contained would be adverse, if produced."

[4]Home argues the petition was not timely because it was filed 50 days after the filing of the board's opinion rather than within the 45 days required by section 5950 of the Labor Code. However, Code of Civil Procedure section 1013 applies to this proceeding, giving petitioner an additional five days. (*Villa* v. *Workers' Comp. App. Bd.* (1984) 156 Cal.App.3d 1076 [203 Cal.Rptr. 26].)

## II

PT argues the board's opinion and order on reconsideration should be annulled because it did not explain why it refused to annul the first order to reconsider for Home's failure to serve PT. ■ It relies on Labor Code section 5908.5, which requires the board on reconsideration to specify in detail the reasons for its decision.[5] "The purpose of the requirement that evidence be stated and reasons detailed . . . is to assist the reviewing court to ascertain the principles relied upon by the lower tribunal, to help that tribunal avoid careless or arbitrary action, and to make the right of appeal or of seeking review more meaningful. [Citation.]" (*Evans* v. *Workmen's Comn. App. Bd.* (1968) 68 Cal.2d 753, 755 [68 Cal.Rptr. 825, 441 P.2d 633]; see also *Painter* v. *Workers' Comp. App. Bd.* (1985) 166 Cal.App.3d 264, 269 [212 Cal.Rptr. 354].)

Home had a duty to serve PT with its first petition for reconsideration at the time it was filed (Lab. Code, § 5905; Cal. Admin. Code, tit. 8, § 10850.), and lack of service is grounds for dismissing the petition. (1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1984) § 7.02[4][a], p. 7-14.1; Swezey, Cal. Workers' Compensation Practice (Cont.Ed.Bar 1985) Reconsideration, § 10.28 p. 369.) ■ However, "[a] failure to serve the opposing party with a copy of the petition for reconsideration is not necessarily a prejudicial error where such party, after reconsideration is granted, has notice and opportunity to appear at a further hearing in the matter and produce evidence in support of his contentions." (1 Hanna, *supra,* at pp. 7-14.1—7-14.2.)

Here, PT received the petition four days after the board decided to reconsider. However, it submitted a written argument supporting the WCJ's findings of fact and award more than a month before the board issued its decision rescinding the award. PT does not suggest it would have responded differently had it received timely service. Furthermore, PT's argument to annul the order granting reconsideration was presented to the board approximately one year after it was made. During that time, PT participated in another trial on the issue of its lien and submitted argument against a subsequent petition for reconsideration. Given these many opportunities to be heard on the merits of its lien, PT cannot now complain its untimely receipt of the original petition to reconsider was prejudicial error.

---

[5]Labor Code section 5908.5 reads in part as follows: "Any decision of the appeals board granting or denying a petition for reconsideration or affirming, rescinding, altering, or amending the original findings, order, decision, or award following reconsideration shall be made by the appeals board and not by a workers' compensation judge and shall be in writing, signed by a majority of the appeals board members assigned thereto, and shall state the evidence relied upon and specify in detail the reasons for the decision."

Home argues the board was not required to explain its refusal to annul the first order granting reconsideration because the outcome was obvious. We disagree, but need not base our decision on this technicality.

## III

On the merits, PT argues the board incorrectly interpreted the language of section 10622 of the WCAB Rules as creating a conclusive presumption of adverse findings, thus mandating dismissal of the claim.[6] Home argues the rule does create a conclusive presumption which was correctly applied by the board. The board, in its informal reply to the order to show cause, contends the rule creates a rebuttable presumption resulting in conflicting inferences which the board properly weighed.

We agree with PT and the board that the rule creates a rebuttable presumption. There is nothing in the language of the rule to indicate its intent to create a conclusive presumption requiring summary dismissal of a claim.[7] Rather, the rule directs that a particular medical report shall be considered adverse to the suppressing party, thus adding another factor to the weighing process.

Although the board is not bound by statutory rules of evidence (Lab. Code, § 5708), the classifications and policies of the presumptions found in the Evidence Code have been applied to analyze presumptions in the compensation law. (See 1 Hanna, *supra,* pp. 5-46—5-50.) Under this analysis, the rule before us appears to create a presumption affecting the burden of proof. This presumption is established to implement some public policy other than the facilitation of the particular action; here, the policy is to discourage the wilful suppression of evidence. (Evid. Code, § 605.) This type of presumption requires the party against whom it operates to establish the nonexistence of the presumed fact. (Evid. Code, § 606.)

 The question then becomes whether the board properly weighed the adverse inference created by the presumption in deciding the treatment was for a nonindustrial condition. Unfortunately, the board's opinion following reconsideration gives no indication that it weighed the adverse inference against other evidence at all; in fact, there is no mention of the

---

[6] PT also argues section 10622 does not apply because Humberto A.'s refusal to produce the medical report was not wilful. However, we think his refusal to sign a release after he was informed of the proper procedure supports a conclusion of wilfulness.

[7] There are no cases interpreting the effect of this rule. The text published by Continuing Education of the Bar refers to the rule as creating a "quasi-presumption" which is "apparently rebuttable." (Swezey, Cal. Workers' Compensation Practice, *supra,* at pp. 320-321.)

presence or absence of evidence supporting the conclusion that the injury *was* related to the industrial accident.

The record contains several medical reports which included evidence on, among other things, the issue of apportionment. Thus, there was other evidence available to the board which should have been included in its weighing process. Labor Code section 5908.5 requires the board to state the evidence relied on and specify in detail the reasons for its decision. The only evidence and reason the board gave to support its conclusion was the adverse inference it was required to draw. This is insufficient. (See *Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889 [83 Cal.Rptr. 591, 464 P.2d 47]; *Painter* v. *Workers' Comp. App. Bd., supra,* 166 Cal.App.3d 264.)

The order and opinion on reconsideration is annulled. The matter is remanded to the board for further proceedings consistent with this opinion.

Trotter, P. J., and Crosby, J., concurred.