[No. B057776. Second Dist., Div. Six. Mar. 4, 1992.*]

FRANK J. PANENO, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, WAUSAU
INSURANCE COMPANY et al., Respondents.

COUNSEL

Newell & Messer and Phillip R. Newell for Petitioner.

Phillip N. Bruce as Amicus Curiae on behalf of Petitioner.

Mark R. Lippman, Mentz, Finn, Clarke, McDowell & Newton and Thomas M. Finn for Respondents.

OPINION

STONE (S. J.), P. J.—Applicant, Frank J. Paneno, sustained an industrial injury to both knees during his employment as a hearing representative by Wausau Insurance Company (Wausau). The workers' compensation judge (WCJ) found that, after apportionment to preexisting disability, applicant is 13 percent permanently disabled as a result of the industrial injury. The WCJ also found applicant does not need further medical treatment to cure or relieve him from the effects of the industrial injury. On February 27, 1991, respondent Workers' Compensation Appeals Board (WCAB) denied applicant's petition for reconsideration. The WCAB served its order on applicant by mail that same date.

On April 18, 1991, applicant filed a petition for writ of review. He contends, among other things, that the WCAB erred in denying him further medical treatment.

Wausau and its workers' compensation insurer, Sentry Insurance Company, acknowledge the petition was timely under this court's holding in *Villa v. Workers' Comp. Appeals Bd.* (1984) 156 Cal.App.3d 1076 [203 Cal.Rptr. 26] that Code of Civil Procedure section 1013 extends the time for filing a petition for writ of review when the WCAB's decision has been served by mail. They contend, however, that the time for filing should not be extended and request that we overrule *Villa*.

For the reasons expressed herein, we conclude that the time for filing a petition for writ of review may not be extended because the WCAB's

decision has been served by mail. However, in view of the substantial reliance in the Second Appellate District on our holding in *Villa*, our decision that Code of Civil Procedure section 1013 does not apply will not be effective until this opinion becomes final. We further conclude that the WCJ and WCAB erred in apportioning 60 percent of applicant's permanent disability to preexisting disability and in finding applicant does not need further medical treatment to cure or relieve him from the effects of the industrial injury, and we annul the order denying reconsideration.

FACTS

On April 16, 1984, applicant sustained an industrial injury to his right knee when his right foot got caught under a file drawer. By favoring the right knee, applicant sustained an industrial injury to the left knee.

Applicant had had previous problems with both knees. He sustained injuries to the right knee while playing football in high school and college. In the Marine Reserves, he got on and off moving trucks and had "difficulty" with the right knee. In 1965 he was discharged from the Marine Reserves because of knee symptoms. He had right knee surgery in 1965 and left knee surgery in 1979 or 1981. He continued receiving treatment, and, sometime before the industrial injury, his right knee was aspirated and cortisone injected. Although applicant did not have any work restriction immediately before the industrial injury, he had pain in the right knee after prolonged standing or participating in sports. He had swelling in the right knee after strenuous physical activities. Occasionally, his right knee was unstable. He wore a knee support when he skied or went horseback riding.

Applicant had right knee surgery in January 1987 and left knee surgery in April 1987.

Applicant testified that, before the industrial injury, he did construction work. He also skied and hiked in the mountains. Because of the industrial injury, he no longer skis or does construction work. He can walk up to one-quarter to one-half mile on a concrete surface, but he cannot walk on uneven ground. Climbing and descending stairs are difficult.

The right knee is very painful after much driving or standing. The knee occasionally "lock[s]." The left knee is painful and gets warm and swollen.

Applicant continues to ride horses. However, he wears a Velcro brace over an elastic knee brace when he expects to engage in vigorous horseback riding. Applicant explained he wears a Velcro brace "if he expects to be

riding a horse working calves for an hour and-a-half [*sic*] or two hours, when he's doing fence work, or handling bales of hay." Applicant breeds cattle. He also has a hobby in which he attempts to isolate two calves from a herd in two and a half minutes. Applicant tries to get near a fence or rock to mount a horse, but has no difficulty dismounting.

On September 14, 1987, Doctor Wilson Del Pizzo, applicant's treating physician, reported that applicant is permanently disabled. Doctor Del Pizzo stated applicant has slight pain with occasional standing and walking and severe pain with frequent standing and walking. Doctor Del Pizzo also found applicant has severe pain with attempts at squatting, crawling, climbing, or kneeling and with "deep flexion." Doctor Del Pizzo found applicant needs to take anti-inflammatory medication and might need surgery. Doctor Del Pizzo later concluded applicant should avoid prolonged standing and walking and should also avoid squatting, climbing, crawling, and kneeling.

On November 30, 1987, Doctor Del Pizzo reported that X-rays showed applicant had preexisting osteoarthritis with genu varus malalignment. He attributed "a minimum of 70%" of applicant's disability to "pre-existing factors." Doctor Del Pizzo concluded no further medical treatment is necessary for the industrial injury. He stated: "[F]uture medical care will be related to his genu varus and osteoarthritis involving the medial and patellofemoral compartments. We do not feel any future care provided to this patient would be related to his industrial injury but [it] will be related to his pre-existing problems." Doctor Del Pizzo did not explain why he attributed the entire need for further treatment to the preexisting conditions.

In August 1988 Doctor W. Gordon Smith concluded that the left knee injury resulted in a preclusion from heavy work and the right knee injury resulted in a limitation to light work. Doctor Smith attributed 20 percent of the right knee disability to preexisting factors. He found no basis for apportioning the disability caused by the left knee. Doctor Smith concluded applicant would need further medical treatment for both knees.

On March 6, 1989, Doctor Morrison S. McDavid, the agreed medical examiner, reported that applicant has intermittent minimal to slight pain, which becomes moderate with "more strenuous activities." Doctor McDavid concluded applicant is permanently precluded from kneeling, squatting, running, jumping, repeated stair and ladder climbing, and prolonged standing and walking.

Doctor McDavid attributed 70 percent of the right knee disability and 60 percent of the left knee disability to preexisting factors. He concluded that,

absent the industrial injury, applicant would have "some significant limitations" by March 6, 1989, but did not explain what those limitations would have been.

Doctor McDavid found the right knee surgery in 1987 was required because of the industrial injury. He stated the left knee surgery in 1987 may also have been required because of the industrial injury. Doctor McDavid concluded that any further treatment, including surgery, would be attributable to applicant's preexisting condition. Doctor McDavid explained: "Mr. Paneno associates the change in his situation to the April, 1984 event, but medically speaking this was going to happen no matter what on the basis of his X-ray appearance bilaterally here."

On deposition, Doctor McDavid stated that X-rays indicated there was very severe degeneration of the right knee before the industrial injury. He concluded it was reasonably probable that, absent the industrial injury, applicant would have had symptoms by the time Doctor McDavid examined him in 1989, "because he just had too much going on at the time of [the January 1987] surgery."

Doctor McDavid initially stated that he attributed 70 percent of the right knee disability to preexisting degenerative changes. Upon further questioning, he concluded that, absent the industrial injury, applicant probably would have had 70 percent of that permanent disability by March 6, 1989.[1] Doctor McDavid testified that he attributed 60 percent of the left knee disability to preexisting degenerative changes.

Doctor McDavid concluded applicant should get off his feet for five or ten minutes after standing or walking for an hour or walking about one-quarter to one-half mile. Doctor McDavid initially opined that, because applicant goes horseback riding, applicant is not limited to semisedentary work. He stated that mounting a horse puts "a fair amount" of pressure on the knees. After applicant's attorney reminded Doctor McDavid that applicant wears a full-hinged brace on the right knee when applicant goes horseback riding, Doctor McDavid testified: "I think he is getting close [to a semisedentary level]. I think he . . . will deteriorate and get to that level and probably get past that level and up to surgery."

Doctor McDavid testified that further medical treatment for both knees will be required solely because of preexisting problems. He opined applicant

---

[1] Doctor McDavid was asked: "Certainly, 70 percent of the [right knee] disability didn't exist at the time of the April of 1984 injury, did it?" He replied: "No. What I am saying is by the time I am seeing him, I think the probabilities would have been such."

will eventually need a total right knee replacement. When asked whether the industrial injury can be excluded in determining the need for future treatment for the right knee, Doctor McDavid testified: "Well, you know, to the point of definite percentages, 100 percent, no, I don't think I can [exclude the industrial injury]. But if we are going to use the words 'possible' and 'probably,' I think we can get into that category. [¶] I think he did [injure] his knee the day he caught his foot, but it wasn't a high-velocity injury, so I don't think that it's going to *substantially contribute* to need for surgery in the future." (Italics added.) Doctor McDavid concluded that applicant's condition became permanent and stationary sometime between October 1987 and January 1988.

The WCJ issued instructions that applicant's permanent disability be rated based on a preclusion from kneeling, squatting, running, jumping, repetitive stair and ladder climbing, and prolonged standing and walking. The WCJ instructed the rating specialist to apportion 40 percent of the disability to the industrial injury. The rating specialist recommended an 11 percent rating.

Applicant moved to strike the recommended rating on the grounds that his disability is close to semisedentary and that the evidence did not support the apportionment.

At a subsequent hearing, the rating specialist explained how he concluded applicant was 11 percent permanently disabled as a result of the industrial injury. The WCJ did not allow applicant's attorney to question the rating specialist as to what rating he would recommend if he were given different instructions.

The WCJ determined the rating specialist had not given sufficient weight to the instructions that applicant avoid prolonged standing and walking and avoid kneeling and squatting. Based on the rating specialist's testimony as to the appropriate separate rating for each of those restrictions, the WCJ found applicant is 13 percent permanently disabled after apportionment. Based on the opinions of Doctors Del Pizzo and McDavid, the WCJ found applicant should not be reimbursed for prescription medications obtained after January 15, 1989, and applicant does not need further medical treatment to cure or relieve him from the effects of the industrial injury.

Applicant petitioned for reconsideration.

In the report on applicant's petition, the WCJ stated that, because applicant goes horseback riding and pursues a hobby of "cutting" calves out of a herd of cattle, applicant is not limited to semisedentary work. The WCJ

explained that a semisedentary work restriction requires that there be minimal demands for physical effort. The WCJ considered Doctor McDavid's testimony as to the level of applicant's disability and concluded Doctor McDavid did not thoroughly understand what a semisedentary restriction means.

The WCJ concluded the apportionment of permanent disability is appropriate because applicant had preexisting disability. The WCJ relied on the evidence that applicant sustained injuries to his right knee while playing football in high school and college, that he had "difficulty" with the right knee when he got on and off trucks in the Marine Reserves, that he had pain and swelling in the right knee after the 1965 surgery, that he would wear a knee support when skiing and horseback riding, that he had left knee surgery in 1979 or 1981, and that, before the industrial injury, his right knee was aspirated and cortisone injected. The WCJ concluded Doctor McDavid's opinion that, absent the industrial injury, applicant would have "some significant limitations" by March 6, 1989, and the evidence of preexisting degenerative arthritis with genu varus malalignment also support the apportionment. The WCJ stated that the reports of Doctors Del Pizzo and McDavid support his finding that the need for further medical treatment and the prescription medications obtained after January 15, 1989, are not attributable to the industrial injury.

The WCAB adopted the reasoning of the WCJ's report and denied reconsideration.

### DISCUSSION

1. *Time Within Which Petition for Writ of Review Must Be Filed*

Labor Code section 5950 provides: "Any person affected by an order, decision, or award of the appeals board may, within the time limit specified in this section, apply to the Supreme Court or to the court of appeal for the appellate district in which he resides, for a writ of review, for the purpose of inquiring into and determining the lawfulness of the original order, decision, or award or of the order, decision, or award following reconsideration. The application for writ of review must be made within 45 days after a petition for reconsideration is denied, or, if a petition is granted or reconsideration is had on the appeal board's own motion, within 45 days after the filing of the order, decision, or award following reconsideration."

Code of Civil Procedure section 1013 provides in pertinent part: "[A]ny prescribed period of notice and any right or duty to do any act or make any

response within any prescribed period or on a date certain after the service of [a] document [in the action] . . . by mail shall be extended five days if the place of address [of the recipient] is within the State of California . . . ." █ The period within which a petition for writ of review may be filed under Labor Code section 5950 is jurisdictional. (*Southwest Airlines* v. *Workers' Comp. Appeals Bd.* (1991) 234 Cal.App.3d 1421, 1424 [286 Cal.Rptr. 347]; *Nat. Auto. Ins. Co.* v. *Ind. Acc. Com.* (1943) 58 Cal.App.2d 508, 509 [136 P.2d 815]; see *State Farm Fire & Casualty Co.* v. *Workers' Comp. Appeals Bd.* (1981) 119 Cal.App.3d 193, 195-196 [173 Cal.Rptr. 778]; *Litzmann* v. *Workmen's Comp. App. Bd.* (1968) 266 Cal.App.2d 203, 204 [71 Cal.Rptr. 731].)

In *Villa* v. *Workers' Comp. Appeals Bd., supra*, 156 Cal.App.3d 1076, the applicant filed a petition for writ of review 46 days after the WCAB had filed its order denying reconsideration. The WCAB's order had been served by mail. This court initially denied the petition on the grounds it was untimely, but the Supreme Court granted hearing and transferred the matter back to this court, citing *Shearer* v. *Superior Court* (1977) 70 Cal.App.3d 424 [138 Cal.Rptr. 824]. Relying on *Shearer* and former California Administrative Code (now California Code of Regulations), title 8, chapter 4.5, section 10507, we held that Code of Civil Procedure section 1013 extended the time to file a petition for writ of review because the WCAB's decision was served by mail. (*Villa, supra*, 156 Cal.App.3d at pp. 1077-1079.)

In *Shearer* v. *Superior Court, supra*, 70 Cal.App.3d 424, Division Four of this court held the period within which to file a petition for writ of mandate regarding denial of a motion to quash service of summons is extended by Code of Civil Procedure section 1013 if the notice of ruling was served by mail. (*Shearer, supra*, 70 Cal.App.3d at pp. 426-428.) Unlike Labor Code section 5950, however, Code of Civil Procedure section 418.10, subdivision (c), provides that the petition for writ of mandate must be filed within 10 days after *service* of notice of entry of the order unless the trial court grants an extension of time to file the petition.

Labor Code section 5316 provides in pertinent part: "Any notice, order, or decision required by this division to be served upon any person either before, during, or after the institution of any proceeding before the appeals board, may be served in the manner provided by Chapter 5, Title 14 of Part 2 of the Code of Civil Procedure . . . ." Section 1013 is included in chapter 5, title 14, of part 2 of the Code of Civil Procedure.

█ California Code of Regulations, title 8, chapter 4.5, section 10507 (rule 10507) applies to WCAB proceedings. Rule 10507 provides: "The

requirements of Code of Civil Procedure Section 1013 shall govern all service by mail."

In *Southwest Airlines* v. *Workers' Comp. Appeals Bd.*, *supra*, 234 Cal.App.3d at pages 1424-1425, the First Appellate District concluded that Labor Code section 5316 and rule 10507 do not affect the time within which a petition for writ of review must be filed under Labor Code section 5950. The court explained: "These provisions do not state that the statutory time for filing a petition for writ of review shall run from *service* of an order, rather than from the *filing* of an order as expressly set forth in section 5950." (*Southwest Airlines* v. *Workers' Comp. Appeals Bd.*, *supra*, 234 Cal.App.3d at page 1424, italics in original.) The court held that the time for filing a petition for writ of review under Labor Code section 5950 is not extended by Code of Civil Procedure section 1013 when the WCAB's decision has been served by mail. (*Southwest Airlines* v. *Workers' Comp. Appeals Bd.*, *supra*, 234 Cal.App.3d at pp. 1423, 1425-1426, 1431.) In *Malloy* v. *Workers' Comp. Appeals Bd.* (1991) 1 Cal.App.4th 1658, 1659-1662 [2 Cal.Rptr.2d 820], the Third Appellate District followed *Southwest Airlines*.

As noted, *ante*, at page 146, Labor Code section 5950 provides that a petition for writ of review must be filed within 45 days after a petition for reconsideration is "denied" or within 45 days after "the filing of the order, decision, or award following reconsideration." The *Southwest Airlines* court disagreed with our holding in *Villa* v. *Workers' Comp. Appeals Bd.*, *supra*, 156 Cal.App.3d 1076 (*Southwest Airlines* v. *Workers' Comp. Appeals Bd.*, *supra*, 234 Cal.App.3d at pp. 1427-1430) and stated that no logical reading of section 5950 would suggest that different rules govern the time to petition for review of an order denying reconsideration and to petition for review of a decision after reconsideration. (*Southwest Airlines* v. *Workers' Comp. Appeals Bd.*, *supra*, 234 Cal.App.3d at p. 1429, fn. 9.) We are persuaded by reasoning in *Southwest Airlines* and conclude we were in error in *Villa*. █ We now agree that Code of Civil Procedure section 1013 does not extend the time within which a party may file a petition for writ of review if the WCAB's decision has been served by mail and we hold that section 1013 does not extend the time within which a petition for writ of review may be filed under Labor Code section 5950. Because there has been substantial reliance on *Villa* in the Second Appellate District, however, our holding that Code of Civil Procedure section 1013 does not extend the time to file a petition for writ of review will apply only to petitions filed after this opinion becomes final.[2] We therefore consider the merits of the present petition.

[2]In *Hinkle* v. *Workers' Comp. Appeals Bd.* (1985) 175 Cal.App.3d 587, 589 [221 Cal.Rptr. 40], the Fourth Appellate District, Division Two, initially denied the petition for writ of review as untimely, but the Supreme Court granted review and transferred the case back to the

2. *Rating Instructions and Findings on Permanent Disability and Apportionment of Permanent Disability*

■ Applicant contends that, because Doctor McDavid testified applicant's permanent disability is "getting close" to the semisedentary level, the WCJ erred in relying on the description in Doctor McDavid's report when the WCJ determined the percentage of permanent disability. We conclude that, in determining the extent of applicant's permanent disability, the WCJ and WCAB considered all aspects of Doctor McDavid's opinion. As noted by the WCJ in the report on applicant's petition for reconsideration, Doctor McDavid did not demonstrate familiarity with the WCAB's definition of a semisedentary work restriction. (Cf. *City of Santa Ana* v. *Workers' Comp. Appeals Bd.* (1982) 128 Cal.App.3d 212, 221-222 [180 Cal.Rptr. 125]; Cal. Workers' Compensation Practice (Cont.Ed.Bar 1985) Permanent Disability Evaluation, § 16.52, p. 719; 1 Herlick, Cal. Workers' Compensation Law Practice (4th ed. 1990) Permanent Disability Benefits, § 7.33, p. 7-40.)

The WCAB's guidelines for work capacity define a disability resulting in a limitation to semisedentary work as meaning ". . . the individual can do work approximately one half the time in a sitting position, and approximately one half the time in a standing or walking position, *with a minimum of demands for physical effort whether standing, walking or sitting.*" (Dept. of Industrial Relations, Schedule for Rating Permanent Disabilities Under Provisions of the Lab. Code of the State of Cal. (July 1978, rev. Oct. 1988) p. 1-A, italics added.) In view of applicant's testimony that he goes horseback riding and has a hobby of "cutting" calves out of a herd of cattle, we conclude substantial evidence supports the determination of the WCJ and WCAB that Doctor McDavid's report best describes the extent of applicant's permanent disability. (See *Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 280-281 [113 Cal.Rptr. 162, 520 P.2d 978].)

■ Applicant asserts that the WCJ erred in denying applicant the opportunity to cross-examine the rating specialist as to what rating he would have recommended if the WCJ had instructed that applicant's permanent disability

Fourth Appellate District, citing *Villa* and directing the court to issue a writ of review. The court issued a writ of review and discussed the petition on the merits. Thereafter, in *Postural Therapeutics* v. *Workers' Comp. Appeals Bd.* (1986) 179 Cal.App.3d 551, 554, footnote 4 [224 Cal.Rptr. 860], Division Three of the Fourth Appellate District held Code of Civil Procedure section 1013 applies to Labor Code section 5950.

Because of the Supreme Court's grant and transfer orders in *Villa* and *Hinkle* and the Fourth Appellate District's opinion in *Postural Therapeutics*, we conclude that the reliance on *Villa* in the Second Appellate District has been reasonable. (See *Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 983 [258 Cal.Rptr. 592, 772 P.2d 1059] [reasonable reliance on previously existing state of law may support prospective application of court's holding].)

was close to a semisedentary level. The WCJ properly disallowed cross-examination about Doctor McDavid's deposition testimony. The purpose of the hearing was to determine whether the rating specialist correctly rated applicant's permanent disability under the instructions he had been given, not to determine what rating he would have recommended if he had been given different instructions. (See *Allied Comp. Ins. Co.* v. *Ind. Acc. Com.* (1961) 57 Cal.2d 115, 121 [17 Cal.Rptr. 817, 367 P.2d 409].)

 Applicant contends that the WCJ and WCAB erred in apportioning 60 percent of applicant's permanent disability to preexisting disability. We agree.

Labor Code section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

 For a physician's opinion to support apportionment under Labor Code section 4750, the physician must describe in detail the exact nature of the preexisting disability and the basis for his opinion. (*King* v. *Workers' Comp. Appeals Bd.* (1991) 231 Cal.App.3d 1640, 1646-1647 [283 Cal.Rptr. 98]; *Ditler* v. *Workers' Comp. Appeals Bd.* (1982) 131 Cal.App.3d 803, 812 [182 Cal.Rptr. 839].) A determination of preexisting disability may be based on complaints to physicians or treatment to the same part of the body before the industrial injury, but the preexisting condition must have been labor-disabling. (*King* v. *Workers' Comp. Appeals Bd.*, *supra*, 231 Cal.App.3d at p. 1647; *Ditler* v. *Workers' Comp. Appeals Bd.*, *supra*, 131 Cal.App.3d at pp. 813, 815, fn. 8.) Although the preexisting condition need not have caused disability in the occupation in which the worker was employed, a prophylactic work restriction may not be applied retrospectively to create a factual or legal fiction of preexisting disability. (*King* v. *Workers' Comp. Appeals Bd.*, *supra*, 231 Cal.App.3d at p. 1647; *Ditler* v. *Workers' Comp. Appeals Bd.*, *supra*, 131 Cal.App.3d at pp. 813, 814.) Apportionment may not be based merely on pathology. (*King* v. *Workers' Comp. Appeals Bd.*, *supra*, 231 Cal.App.3d at p. 1647; *Callahan* v. *Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 621, 631 [149 Cal.Rptr. 647].)

 In the present case, although there was evidence of preexisting pathology, there was no evidence applicant's left knee condition was labor-disabling immediately before the industrial injury. The WCJ and WCAB

therefore erred in apportioning 60 percent of the permanent disability to preexisting disability.

Labor Code section 4663 provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

■ Apportionment is justified under Labor Code section 4663 only if the WCAB finds that, absent the industrial injury, part of the permanent disability would have resulted from the natural progression of a nonindustrial disease. (*Pullman Kellogg* v. *Workers' Comp. Appeals Bd.* (1980) 26 Cal.3d 450, 454 [161 Cal.Rptr. 783, 605 P.2d 422]; *King* v. *Workers' Comp. Appeals Bd.*, *supra*, 231 Cal.App.3d at p. 1648.) "It is disability resulting from, rather than a cause of, a disease which is the proper subject of apportionment; 'pathology' may not be apportioned. [Citations.]" (*Pullman Kellogg, supra*, 26 Cal.3d at p. 454.) There must be medical evidence expressly stating that the apportioned disability is the result of the natural progression of a preexisting, nonindustrial condition and would have occurred in the absence of the industrial injury. (*King* v. *Workers' Comp. Appeals Bd.*, *supra*, 231 Cal.App.3d at p. 1648; *Ditler* v. *Workers' Comp. Appeals Bd.*, *supra*, 131 Cal.App.3d at p. 812.)

■ In the present case, the WCJ and WCAB relied on the opinions of Doctors McDavid and Del Pizzo in support of their apportionment findings. Doctor McDavid testified in essence that, absent the industrial injury, 70 percent of the permanent disability attributable to the right knee would have been present when Doctor McDavid examined applicant. That testimony could support the apportionment of 60 percent of the permanent disability attributable to the right knee if a natural progression theory were used. (Cf. *U.S. Auto Stores* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 469, 474-475 [93 Cal.Rptr. 575, 482 P.2d 199].)

There was no medical opinion expressed, however, that, absent the industrial injury, 60 percent of the disability attributable to the left knee would currently exist as a result of natural progression of a preexisting disease. Thus, substantial evidence does not support apportionment of the disability attributable to the left knee to natural progression of a preexisting disease.

Because substantial evidence does not support apportionment of 60 percent of applicant's permanent disability to preexisting disability, the WCAB's decision must be annulled and the matter remanded for further proceedings. ■ When the WCAB grants reconsideration, it has the

power to direct the taking of further evidence. (Lab. Code, §§ 5701, 5906; *Lundberg* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 436, 440 [71 Cal.Rptr. 684, 445 P.2d 300]; *King* v. *Workers' Comp. Appeals Bd., supra,* 231 Cal.App.3d at p. 1649; *Raymond Plastering* v. *Workmen's Comp. App. Bd.* (1967) 252 Cal.App.2d 748, 753 [60 Cal.Rptr. 860].) Upon remand, the WCAB may decide the employer and its insurer have had a sufficient opportunity to meet their burden of proof on apportionment and may therefore enter an award denying apportionment. Alternatively, the WCAB may conclude the record should be further developed on one or more of the apportionment issues and may therefore direct the taking of further evidence on apportionment, such as an explanation by Dr. McDavid as to precisely what significant limitations would have occurred by March 6, 1989, absent the industrial injury.

3. *Reimbursement for Prescription Medications and Need for Further Medical Treatment*

Labor Code section 4600 provides in pertinent part: "Medical, surgical, chiropractic, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, including artificial members, which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. . . ."

In *Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399 [71 Cal.Rptr. 678, 445 P.2d 294], the court stated: "There can be no doubt that medical expense is not apportionable. . . . Neither [Labor Code] section 4600 nor any of the succeeding sections in the article of the code dealing with medical and hospital treatment state[s] or even suggest[s] that the employer may pay part of the expenses. So long as the treatment is reasonably required to cure or relieve from the effects of the industrial injury, the employer is required to provide the treatment, *and treatment for nonindustrial conditions may be required of the employer where it becomes essential in curing or relieving from the effects of the industrial injury itself.* [Citation.] Medical treatment unrelated to the industrial injury need not be furnished by the employer. [Citation.] If medical expense reasonably necessary to relieve from the industrial injury were apportionable, a workingman, who is disabled, may not be able to pay his share of the expenses and thus forego treatment. Moreover, the uncertainties attendant to the determination of the proper apportionment might cause employers to refuse to pay their share until there has been a hearing and decision on the question of apportionment, and such delay in payment may compel the injured workingman to forego the prompt treatment to which he is entitled." (*Id.* at pp. 405-406, italics added; accord, *Braewood Convalescent Hospital* v. *Workers' Comp. Appeals*

*Bd.* (1983) 34 Cal.3d 159, 165-166 [193 Cal.Rptr. 157, 666 P.2d 14]; *Rouseyrol* v. *Workers' Comp. Appeals Bd.* (1991) 234 Cal.App.3d 1476, 1484 [286 Cal.Rptr. 250].)

■ The WCAB may not isolate part of a physician's opinion and disregard other parts that contradict or nullify the portion on which the WCAB relies. (See *Bracken* v. *Workers' Comp. Appeals Bd.* (1989) 214 Cal.App.3d 246, 255 [262 Cal.Rptr. 537].) "[A] physician's report and testimony must be considered as a whole rather than in segregated parts; and, when so considered, the entire report and testimony must demonstrate the physician's opinion is based upon reasonable medical probability. [Citations.]" (*Ibid.*)

■ As noted, *ante,* at pages 145-146, in the present case the WCJ and WCAB relied on the opinions of Doctors Del Pizzo and McDavid in finding there is no need for further medical treatment to cure or relieve applicant from the effects of the industrial injury. Although Doctor Del Pizzo concluded that future medical care would be solely for the genu varus and osteoarthritis involving the medial and patellofemoral compartments, he also found that as much as 30 percent of applicant's permanent disability was attributable to the industrial injury. Doctor Del Pizzo did not explain why he concluded that part of the permanent disability was attributable to the industrial injury but that the industrial injury would not contribute to the need for further medical care. Thus, Doctor Del Pizzo did not demonstrate that his opinion was based on reasonable medical probability.

Doctor McDavid stated in his report that any further medical treatment would have to be attributable to the preexisting condition. On deposition, he explained that conclusion by testifying that the industrial injury would not "*substantially* contribute to [the] need for surgery in the future." (Italics added.) Thus, Doctor McDavid's opinion as to the lack of a need for further treatment on an industrial basis involved apportionment. Because medical expenses may not be apportioned, the WCJ and WCAB erred in finding that applicant does not need further medical treatment to cure or relieve him from the effects of the industrial injury. (*Granado* v. *Workmen's Comp. App. Bd.,* *supra,* 69 Cal.2d at pp. 405-406; *Rouseyrol* v. *Workers' Comp. Appeals Bd.,* *supra,* 234 Cal.App.3d at pp. 1484-1485.) ■ The WCJ and WCAB also erred in denying reimbursement for prescription medications received after January 15, 1989, because the WCJ and WCAB based that decision on the finding that applicant does not need further treatment on an industrial basis.

The February 27, 1991, order of respondent Workers' Compensation Appeals Board denying reconsideration of the workers' compensation judge's findings as to apportionment of permanent disability, reimbursement

for prescription medications obtained after January 15, 1989, and need for further medical treatment is annulled, and the matter is remanded to the Workers' Compensation Appeals Board for further proceedings consistent with the views expressed herein.

Each party shall bear its own costs.

Gilbert, J., and Yegan, J., concurred.

A petition for a rehearing was denied March 26, 1992.